IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE JANUARY TERM THEREOF, HELD AT CHARLES-
TON, IN THE COUNTY OF KANAWHA, COMMENC-
ING ON THE FOURTEENTH DAY OF
JANUARY, 1875, AND ENDING
ON THE FIFTH DAY OF
MARCH, 1875.

---

# CHARLESTON.

## NICHOLS v. HEIRS OF NICHOLS.

February 23, 1875.

1875.
January Term.

1. A bill of review lies to have a final decree of the court revised, al-
tered or reversed.

2. Such a bill lies in two varieties of cases, viz: upon error in law ap-
pearing upon a discovery of new, relevant, material matter, or
material evidence not known prior to the decree sought to be re-
viewed, and which could not have been discovered by the exercise
of reasonable diligence.

3. Although, ordinarily, a bill of review will not lie where the newly
discovered evidence is simply confirmatory or cumulative—still if
the newly discovered evidence is not merely confirmatory or cu-
mulative, but decisive in its nature, and could not be discovered
before the final decree sought to be revised, by the exercise of
reasonable diligence, in such a case a bill of review will lie.

4. The nature of the new matter or evidence must be verified by affi-
davit, as well as that such new matter or evidence could not be
produced or used by the party claiming the benefit of it.

5. Though the fact proposed to be proven be known before the final decree, (though some contradiction appears in the cases), there is no authority that the newly discovered evidence of the fact would not be a sufficient ground for a bill of review.

6. The filing a bill of review for newly discovered evidence is not a matter of right, but rests in the sound discretion of the court.

7. When a bill of review is brought upon new matter or evidence, and the defendant thinks it is not relevant, he may demur.

8. Upon a bill of review for errors apparent upon the face of the decree it is not allowable to look into the evidence in the case in order to show the decree to be erroneous in its statement of the facts; and if the decree does not contain a statement of the facts on which it is based there can be no relief by bill of review—the remedy is by appeal.

9. The fifty-ninth section of chapter one hundred and twenty-five of the Code of West Virginia applies as well to answers to bills filed prior to the time the Code took effect, in the causes then pending and undetermined, as to answers filed subsequent to the time the Code took effect; although said section lessens the force and effect of an answer, as evidence in the cause.

10. A bill of review is filed to review and reverse a final decree dismissing a bill to enforce a parol contract for the purchase ot land. During the pendency of the bill of review the defendant in the original suit died. Thereupon the plaintiff in the bill of review filed a bill of revivor against the legal heirs of the decedent, to which the personal representative of the decedent was not made a party. It was error not to make such personal representative a party to the bill of revivor, the cause not having otherwise been revived against him.

11. Where the court overrules a demurrer to a bill there should be a rule upon the defendant to answer the bill, before a decree is taken against him for the relief prayed in the bill.

This was an appeal taken by Isaac Nichols, from certain decrees and proceedings of the circuit court of Nicholas county, in a suit in chancery therein pending, wherein Alexander Nichols was complainant and the said Isaac Nichols and others, the heirs at law of James Nichols, were respondents.

The purpose of the suit was to enforce the specific execution of a verbal contract for the sale of a tract of land by the said James Nichols to the said Alexander Nichols.

The other material facts appear in the opinion of this Court.

In the progress of the suit below the Hon. Nathaniel Harrison, and the Hon. Joseph M. McWhorter, judges of said circuit court, at the date of the decrees or orders, presided.

*Samuel Price*, for the appellant.

*Adam C. Snyder* and *James W. Davis*, for the appellee.

HAYMOND, PRESIDENT:

The plaintiff filed his bill in the circuit court of the county of Nicholas, in December, 1865, in which he al-leges that on or about November, 1857, he and James Nichols made a verbal contract or agreement, whereby James Nichols, in consideration of the sum of $400 to him in hand paid by plaintiff, agreed to sell and convey to plaintiff, by good and sufficient warranty deed, a par-cel of land in said county consisting of two tracts, situ-ate on the waters of Peters creek, a tributary of Gauley river, bounded on the east side thereof by lands of Hun-ter Brown, south by lands owned and recently purchased by Willis Nichols, and north by lands of David C. R. Vanbibber, containing one hundred acres more or less ; that plaintiff, in accordance with said agreement of pur-chase and sale, immediately paid the said $400 to said James Nichols, and was thereupon put into possession of said premises, and has ever since been, and now is, in possession thereof; that soon after the said sale and pay-ment the said James Nichols and plaintiff went to the court house to have a deed made out for said land, con-veying the same to plaintiff; that the said James Nich-ols was prevented by accident from making the same, but promised to do so at an early day ; that said James Nichols has not yet made the deed, although often re-quested so to do, and now utterly refuses to make the same : that plaintiff has made many valuable and per-manent improvements on the land, and in consequence

of the failure of said James Nichols to perform his part of said agreement, plaintiff has been put to great inconvenience, trouble and expense. And plaintiff prays that a specific performance of said contract be decreed, and said James Nichols compelled to execute and deliver to him a good and sufficient warranty deed for said land.

Afterwards, on the 15th day of March, 1866, said James Nichols filed his answer to said bill in which he says that it is not true that he, in the year 1857, or any other time, as plaintiff alleges, entered into a contract with plaintiff, either verbally or in writing, for the sale of the hundred acres of land described in the bill, for the sum of $400, and that he never, at any time, agreed to make to said complainant a deed with general warranty for said land. He denies the allegation of payment of $400, purchase money, and avers that plaintiff has never, as yet, paid him one dollar in consideration of the land, but on the contrary plaintiff has been living on and supporting his family from said land, and receiving all the products of the same and appropriating them to his own use, and all the profits arising therefrom, for a period of eight or nine years. He denies that he and plaintiff went to Nicholas court house to have a deed made to plaintiff for said land and was prevented therefrom by accident. He denies that plaintiff has made valuable and permanent improvements on the land, but he admits that plaintiff has cleared some six or seven acres of the land, and says plaintiff received from it six or seven crops of corn and small grain. He avers that plaintiff is now, and was on the 22d of December, 1864, and has been ever since, living in a house situated on said land, which is now in controversy, and on said day the complainant addressed to him a note in writing acknowledging that he was then living in his

23

house, and that he would take good care of all the plun-der in the same, and that at any time he wished to re-turn, he could have it with the furniture, &c.

During the progress of the cause the depositions of a large number of witnesses were taken by both plaintiff and defendant. To undertake to state the evidence of different witnesses would make this opinion too volum-inous, and it is really unnecessary ; suffice it to say that a large mass of the evidence tends strongly to prove that there was a contract of sale made by James Nichols to plaintiff, of the said land, at or about the time stated in the bill ; that plaintiff was put in possession of the land by James Nichols under such contract and that plaintiff made permanent improvements on the land ; the deposi-tions of a part of the witnesses tend to prove, substan-tially, the allegation of the bill. The evidence of other witnesses tends to prove that there was a contract made between James Nichols and plaintiff for the sale of the land together with the personal property of said James Nichols to the plaintiff in consideration of from $100 to $400 ; and that plaintiff should support said James Nichols and his wife during their lives. Oth-er evidence tends to prove that plaintiff purchased the land at the price of $400 and paid the purchase money, and that plaintiff for and in consideration of the personal property of said James, which he received the posses-sion of with the land, agreed to support said James and his wife during their respective lives ; and that he did so during the life of the wife of James and as much longer as James would allow him. Some of the evidence tends to prove that there were two contracts made between James and plaintiff, which were essentially different but made near the same time. The evidence satisfactorily proves that the plaintiff paid said James the amount of money he agreed to pay, whether it was $400, or less. But taking the whole evidence upon the subject, there is some confusion as to what was the true contract between plaintiff and said James in relation to the land—whether

he purchased it for the consideration stated, or whether the contract was that he was to have the land and personal property for the consideration of a less sum in money than $400 and that he should support said James and his wife during their respective lives; and the evidence proves that plaintiff is the son of said James.

In this state of the case, on the 6th day of May, 1869, at a circuit court of said county, the cause came on to be heard on the bill, answer, replication, exhibits and depositions; upon consideration whereof the court was of opinion that the plaintiff is not entitled to specific execution of his contract claimed, and dismissed the cause and decreed that plaintiff pay the costs; but inserted at the end of the decree that the dismissal was without prejudice to any other suit, either at law or equity, which the plaintiff may choose to bring touching the matter in controversy in the suit.

Afterwards, on the 5th day of May, 1870, it appears that plaintiff appeared before said circuit court and, by leave of the court, filed a bill of review in which he restates and avers, substantially, the same matters and things in relation to said purchase of said land, possession, improvements, &c., as are contained in the original bill. And he further states and alleges that the said James, filed his answer to the said bill, to this effect, viz: "That it was not true that the plaintiff and defendant, in the year 1867, or at any other time, entered into a contract for the sale and purchase of the land described in the plaintiff's bill for the sum of $400; that said plaintiff had never paid anything for said land; that the parties never went to Nicholas court house to have a deed drawn in accordance with said contract, and thereupon, the defendant prayed that plaintiff's bill might be dismissed,. &c." He also alleges that he replied to said answer, and issue having been joined and witnesses examined, and proofs closed, that the said court dismissed his said bill with costs by its decree pronounced in the said cause on the —— day of May, 1869, as by said decree and other

proceedings, now remaining of record in said court, appears. The plaintiff further avers, that since the rendition of said decree, he has discovered that he can prove, by admissions made by said defendant, that the facts set forth in said bill are true as therein stated ; that by the evidence which he has since discovered he can show that he is entitled to a specific execution of the contract and purchase set out in the original bill ; that the defendant admits said sale and the payment of the purchase money, as will appear from his receipt "herewith" filed as a part of the bill, marked "X ;" and that he can fully show that the facts set forth and the denials made in the answer of the defendant, are untrue, incorrect, and made under misapprehension of the very truth of the matter in controversy ; that he was, in fact, ignorant of the contents of said answer, and he avers that it was impossible for him to discover this new testimony before the former trial, and that he had used due diligence, but was unable to get or discover the same until the original bill was dismissed ; and that he is advised and insists that under the circumstances aforesaid the said decree of dismissal, in consequence of such new matter and evidence aforesaid, ought to be reviewed and reversed, and a specific execution of the contract of sale for the land in the original bill mentioned decreed to the plaintiff by the court. The bill of review concludes with the prayer that the said decree of dismissal, may be reversed, and the specific execution of said contract decreed and such other general relief as the court may see fit to grant.

The bill of review is verified by the oath of the plaintiff.

Exhibit "X" filed with the bill is in these words, viz:

"NICHOLAS CO., WEST VA.,
February 5, 1870.
Received of Alexander Nichols, in the year 1857, *foure* hundred, dollars, the full payment of one hundred

*ackers* of land on White Water, in Nicholas Co., where he now lives."

"Teste.

John Crookshanks,
George W. Dunbar."

his
JAMES X NICHOLS."
· mark.

In the record, after the bill of review was filed, there is some confusion. At page seventy-four this entry appears, viz: "The plaintiff, by leave of the court, filed a bill of review, to which the defendant filed a demurrer and the plaintiff joined in the demurrer and the case was argued by counsel: upon consideration whereof, it is adjudged, ordered and decreed that the demurrer to the bill be sustained and the bill dismissed, and that the defendant recover his costs." This entry has neither caption or date to it, and the record fails to disclose by what court it was made, further than the words of the entry quoted show. But on the same page, and immediately under said entry, it appears that on the 6th day of May, 1870, at a circuit court held and continued for the county of Nicholas, at the court house thereof, the following order was made, by said court, in the cause, viz: "This day, by leave of the court, the plaintiff, by his counsel, filed his bill of review, to which the defendant demurred, and this cause is continued till the next term." It appears that after the last recited decree was made the defendant died, and afterwards on the 10th day of November, 1870. the said circuit court, on motion of the plaintiff, granted him leave to file an amended bill and bill of revivor in the cause; which was done and process directed to issue against the parties therein mentioned.

The bill of revivor, among other things, alleges the death of the defendant, James Nichols, that he died intestate, leaving a number of children and grand-children, who are named, upon whom the legal title to the land in controversy descended, and he professes to file with this bill the written contract for the purchase of the land

marked "X." There is no other exhibit appearing in the record marked "X," except said receipt, dated February 5, 1870, before mentioned.

After this several depositions appear to have been taken and filed in the cause. On the 13th day of November, 1871, the cause came on to be heard by the said circuit court, upon the bill of review and revivor, and process executed, and demurrer thereto by the defendants, and the court overruled the demurrer ; and then the decree proceeds to declare that thereupon the defendant, Isaac Nichols, tendered his answer to said bill, "to the filing of which the plaintiff objected, which objection the court overrules, and said answer is filed, and the order heretofore made dismissing the plaintiff's original bill is set aside and annulled."

From this decree the defendant, Isaac Nichols, one of the children and legal heirs of said James Nichols, deceased, appealed to this Court.

The *first* question that arises for consideration is, did the circuit court err in overruling the demurrer filed by the defendant.

Cooper, in his Equity Pleading, page 88, says: "Bills of review, which are in the nature of a writ of error, are brought to have decrees of the court reviewed, altered or reversed; and there are two varieties of this bill; the *first* of which is brought where the decree has been signed and enrolled ; and the *second* where the decree has not been signed and enrolled. The *first* of these bills is called, by way of pre-eminence, a bill of review, whilst the *other* is distinguished by the appellation of only a bill in the nature of a bill of review, or a supplemental bill in the nature of a bill of review."

The same author, on page 89, says: "There are but two cases in which this species of bill is permitted to be brought, and these two cases are settled and declared by the first of the ordinances in chancery of the Lord Chancellor Bacon, respecting bills of review, which ordi-

nances have never since been departed from. It is this:

'No decree shall be reversed, altered or explained, being once under the great seal, but upon bill of review; and no bill of review shall be admitted, except it contain either error in law, appearing in the body of the decree, without further examination of matters of fact, or some new matter which hath arisen in time, after the decree, and not any new proof which might have been used when the decree was made; nevertheless, upon new proof that is come to light after the decree was made, which could not possibly have been used at the time when the decree passed, a bill of review may be grounded, by the special license of the court, and not otherwise.' "

Mitford, in his Chancery Pleadings, pages 83 and 84, says: "The object of a bill of review is to procure an examination and reversal of a decree, made upon a former bill, and signed by the person holding the great seal and enrolled. It may be brought for error of law appearing in the body of the decree itself or upon discovery of new matter. If it is sought to reverse a decree signed and enrolled, upon discovery of new matter, the leave of the court must be first obtained; and this will not be granted but upon allegation, upon oath, that the new matter could not be produced or used, by the party claiming the benefit of it at the time when the decree was made. If the court is satisfied that the new matter is relevant and material, and such as might probably have occasioned a different determination, it will permit a bill of review to be filed." In the case of *Bowyer v. Lewis*, 1 H. & M., 554, Judge Tucker, in delivering the opinion of the court, on page 558, says: "The authorities cited from Mitford's Chancery Pleadings, 78 to 84, clearly show that a bill of review, properly so called, is granted only after a final decree, either upon error in law, appearing in the body of the decree itself, or upon discovery of *new matter*. If, then, this be a proper bill of review, predicated on the ground that a final decree had been pronounced in the cause, I

think it was premature ; the cause being still in court, and subject to the chancellor's future discretion, upon every point not already decided upon by this court, upon appeal. On the other hand, if this bill be a supplemental bill only, in the nature of a bill of review, the admission or rejection of it by the chancellor, whether properly or improperly decided, could only be decided upon by this court after a *final* decree shall be had in the cause, unless the chancellor, in his discretion, had granted an appeal."

In this opinion Judge Tucker uses these words: " Until this was done the cause could not be said to be *out of court,* and consequently the decree not final."

In the case of *Laidley v. Merrifield,* 7 Leigh 346, it was decided that where " a party against whom a decree, *interlocutory* in its nature, has been rendered, files a bill which he styles, and which is in form a bill of *review,* alleging errors on the face of the decree, as well as new facts in relation to the matter of controversy, and praying that the decree be reviewed and reversed: *Held,* notwithstanding the form of the bill, it shall be taken as a *supplemental bill,* in the nature of a bill of review and petition for rehearing." In that case Judge Cabell, in his opinion, on page 353, says : "A bill of review, strictly speaking, is a proceeding to correct a final decree, in the same court, for error apparent on the face of the decree, or on account of new evidence discovered since the final decree. The decree being final, the bill of review is not regarded as a part of the cause in which the decree was rendered. But when a decree is only interlocutory, but liable to the same objections, the party injured must seek his redress not by a bill of review, *as such,* but by petition or supplemental bill in the nature of a bill of review. Such petition or supplemental bill is regarded as a part of the very cause, the decree in which is sought to be corrected, and any order or decree of the court on the petition or bill is only interlocutory, and cannot be appealed from in England, however erroneous or unjust

it may be, until the decree which is sought to be cor-rected by the petition or bill shall itself become final. But when that decree becomes final, the appeal taken from it brings up every part of the cause, and will lead to the correction of every error, in whatever stage of the cause it may have been committed. And such was the law of *Virginia* until the statute was passed allowing appeals from interlocutory decrees. That statute, however, has produced a material change in the course of our courts on this subject."

In the case of *Carter v. Allan,* 21 Gratt. 241, Judge Christian, in delivering the opinion of the court, in speaking of bills of review, says: " In the *first* place, the new matter must be relevant and material, and such as, if known, might probably have produced a different determination. In the *next* place, the new matter must have first come to the knowledge of the party after the time when it could have been used in the cause at the original hearing. *Another* qualification of the rule, quite as important and instructive, is, that the matter relied upon must not only be new, but it must be such as the party, by the use of reasonable diligence, could not have known."

"A bill of review may be brought upon the discovery of new matter—such, for example, as the discovery of a release or a receipt which would change the merits of the claim upon which the decree was founded. But leave of the court must be obtained before a bill of review can be filed on this ground; which leave to file it will not be granted without an affidavit that the new matter could not be produced or used by the party claiming the benefit of it in the original cause. The affidavit must also state the nature of the new matter, in order that the court may exercise its judgment upon its relevancy and materiality. Both of these considerations, to which the affidavit applies, are indispensible. In the *first* place, the new matter must be relevant and material, and such

24

as, if known, might probably have produced a different determination. Story's Eq. Pl., sections 412 and 413. It seems that it is established that matter discovered after a decree has been made, although not capable of being used as evidence of anything which was previously in issue in the cause, but constituting an entirely new issue, may yet be the subject of a bill of review, or of a supplemental bill in the nature of a bill of review." Story's Eq. Pl., section 416 and note 1.

In *Young v. Keighly*, 16 Ves. (Jr.) Ch. 348, 350, Lord Eldon said: "The ground of a bill of review is error, apparent on the face of the decree, or new evidence of a fact materially pressing upon the decree, and discovered at least after publication in the cause. If the fact had been known before publication, though some contradiction appears in the cases, there is no authority that *new evidence* would not be sufficient ground. Cumulative, written evidence, it seems, has been admitted, and even written evidence, to contradict the testimony of a witness. *Attorney General v. Turner*, Ambler 587; *Willan v. Willan*, 16 Ves. (Jr.) Ch. 72, supposes that new testimony of witnesses may be admissible. "But if it be admissible (upon which I am not called upon to decide) it ought to be received with extreme caution, and only of such a nature as ought to be decisive proof." Story's Eq. Pl., section 415, note 3.

There is another important qualification which is indeed desirable from the very language of Lord Bacon's Ordinance, and that is, that the granting of such a bill of review for newly discovered evidence is not a matter of right; but it rests in the sound discretion of the court. It may, therefore, be refused, although the facts, if admitted, would change the decree, when the court, looking to all the circumstances, shall deem it productive of mischief to innocent parties, or for any other cause unadvisable."

Mitford, in his Equity Pleadings, page 205, in speaking of bills of review, says: "But if brought upon new

matter, and the defendant should think the matter not relevant, probably he might take advantage of it by way of demurrer, although the relevancy ought to be considered at the time leave is given to bring the bill." See also Story's Eq. Pl., section 636.

The evidence set forth in the bill of review as newly discovered must appear to be material to the merits of the case. *Ord v. Noel*, 6 Madd. Ch., 127, Am. ed., 86 ; *Livingston v. Hubbs*, 3 Johns. Ch. (N. Y.) 124; and not such evidence as might have been discovered with ordinary diligence, before the decree. *Livingston v. Hubbs*, above cited, and *Lansing v. Albany Insurance Co.*, 1 Hop. Ch. (N. Y,) 102. If a party were allowed to go on to a decree without looking for evidence which might be obtained, by proper search, and afterwards, by finding the evidence, to file a bill of review, there would be no end to such bills. *Bingham v. Dawson*, Jacob, 243, 4 Cond. Eng. Ch. Rep., 114 ; *Pendleton and wife v. Fay*, &c., 3 Paige Ch. (N. Y.) 206 ; 2 Robinson's Practice (old) 416. "In regard to errors of law, apparent upon the face of the decree, the established doctrine is that you cannot look into the evidence in the case, in order to show the decree to be erroneous in its statement of the facts. That is the proper office of the court upon appeal. But taking the facts to be, as they are stated to be on the face of the decree, you must show that the court has erred in point of law. If, therefore, the decree do not contain a statement of the material facts on which the decree proceeds, it is plain that there can be no relief by a bill of review, but only an appeal to some superior tribunal." Story's Eq. Pl., sec. 307.

The record shows this to be a peculiar case—indeed, such as is seldom met with. The demurrer admits the truth of the material allegations of the bill, to which it can be applied. And upon a careful examination of the bill, as to the new facts and evidence alleged to be discovered, it seems to me that said evidence is relevant, material and not merely cumulative, but decisive in its

nature upon the question in issue between the parties to the original bill and bill of review. The plaintiff expressly avers in his bill of review that it "was impossible for him to discover this new testimony before the former trial, and that he had used due diligence, but was unable to get or discover the same until the original bill was dismissed."

Looking to the answer of said James and considering that it purported to be sworn to by him, it would be unreasonable to hold that the plaintiff was guilty of negligence or laches in not procuring the admissions, or the evidence thereof, earlier. It was but reasonable for plaintiff to believe, under the circumstances, that said James would not make such admissions after his answer was filed, notwithstanding he (plaintiff) was conscious that the admissions were true. That the answer of said James may have been made under misapprehension is, under the circumstances and facts shown in evidence in the cause, possible. It may have been procured by imposition, deception, or fraud, or made under mistake or misapprehension. It is seldom that men, after denying a fact, knowingly, and with proper understanding of the substance and meaning of the oath, afterwards admit, in writing, in the presence of attesting witnesses, or other persons, a fact which is denied by the oath. If the allegations of the bill of review are true, it would seem that in this instance, at least, it has been done.

At the time plaintiff's answer to the original bill was filed, according to the rules of courts of equity, the answer of a defendant verified by his oath, so far as it was responsive to material allegations of the bill and contained denials thereof, not only had the effect of putting the plaintiff to the proof of the material allegations denied, but was given such force and effect as evidence that to overcome them it required the evidence of two witnesses to the same fact, or one witness corroborated by circumstances equivalent to another witness.

But during the pendency of the original cause, and before its dismissal, it was provided by law that "When a defendant in equity shall in his answer deny any material allegation of the bill, the effect of such denial shall only be to put the plaintiff on satisfactory proof of the truth of such allegation, and any evidence which satisfies the court or jury of the truth thereof shall be sufficient to establish the same." Code of West Virginia, section fifty-nine, chapter one hundred and twenty-five. This law was in force at the time the cause was dismissed, and applied to the answer of said James. The force and effect given to an answer in chancery, as evidence under the rules in equity prior to the passage of this section, were not inherent to or inseparable from the proceedings and were subject to be modified or changed at the pleasure of the Legislature during the pendency of a suit and after the filing of an answer. "It must also be evident that a right to have one's controversies determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the state provides for its citizens, and, generally, in legal contemplation, they neither enter into and constitute a part of any contract nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting the remedy, they must, therefore, at all times, be subject to modification and control by the legislature ; and the changes which are enacted may lawfully be made applicable to existing causes of action, even in those states in which retrospective laws are forbidden." Cooley's Con. Lim., 366, 367 and authorities cited in notes 1 and, 2, on page 367.

"The true principle of the operation of acts of part performance seems only to require that the acts in question be such as must be referred to some agreement and may be referred to the alleged one that they prove the existence of some agreement and are consistent with the one alleged." Fry on Specific Performance, Am. ed., page 252, section 386. The principle upon which courts

1875.
January Term.

Nichols
.v.
Heirs of
Nichols.

of equity exercise their jurisdiction in decreeing specific performance of a parol agreement, accompanied by part performance, is the fraud and injustice which would result from allowing one party to refuse to perform his part, after performance by the other, upon the faith of the contract. *Ibid*, 254, section 388. The agreement which the acts of part performance allowed to be set up by parol evidence must be of such a nature that the court would have had jurisdiction in respect of it, in case it had been in writing. *Ibid*, 266, section 392. Where the engagement is of an honorary and not of a legal character, part performance gives the court no jurisdiction, and there can be no part performance of an incomplete agreement. *Ibid*, 257, sections 393, 394; *Lowry v. Buffington*, 6 W. Va., 249.

Upon the whole it seems to me that the bill of review is good and sufficient—that the court properly allowed it to be filed and did not err in overruling demurrer thereto. But I think it is clear that the bill of revivor should have been against the personal representative of the decedent James, as well as his legal heirs. But the personal representative of the said decedent was not made a party to the bill of revivor, and the bill of review had not otherwise been revived against such personal representative. The personal representative had unquestionably the right to contest the payment of the alleged purchase money, and in this view it is material that the cause should be revived against him as well as the legal heirs of the decedent. The personal representative not being made a party to the bill of revivor in this cause, the demurrer to the bill of revivor should have been sustained by the court and leave given to the plaintiff to file an amended bill of revivor making the personal representative a party thereto.

The record fails to disclose that process was served on all the defendants to the bill of revivor, or that any proceedings were taken at rules against those defendants upon whom the process was served. On overruling the

demurrer the court should have made a rule upon the defendants, who did not then answer, to answer before proceeding to set aside and annul the order or decree made dismissing the plaintiff's original bill. Code of West Va., ch. 125, sec. 30; *Pecks v. Chambers, supra; Sutton v. Gatewood and wife,* 6 Munf. 398; 2d vol. Robinson's (old) Practice, 302.

Some question may hereafter arise in the cause between plaintiff and Isaac Nichols, as a purchaser from the said decedent of the land in controversy, with or without notice, or as a *pendente lite* purchaser, as to whether any effect can be given to the simple admissions of the decedent, made in relation to the contract between him and plaintiff, after said. Isaac may have purchased the same, but I do not now intimate any opinion upon that question as it does not arise upon the pleadings involved by the demurrer.

For the foregoing reasons the said decree of the circuit court of said county of Nicholas rendered on the 13th day of November, 1871, must be reversed and annulled and the appellant Isaac Nichols recover against the appellee Alexander Nichols, his costs about the prosecution of his appeal in this Court expended.

The other Judges concurred.

The following is the decree rendered in this Court. This Court proceeding to render such decree in the cause as the said circuit court should have rendered, it is adjudged, ordered, and decreed that the demurrer of the defendants to the said bill of review be overruled, but that the demurrer of the defendants to the bill of revivor filed in this cause be sustained. And this cause is remanded to the said court for further proceedings therein to be had with leave to the plaintiff to file an amended bill of review and an amended bill of revivor or an amended bill of revivor alone, as he may choose, to revive this cause against the personal representative of said

James Nichols, deceased, as well as his legal heirs, and to the defendant Isaac Nichols to file his answer subject to all proper exceptions, and for further proceedings there to be had according to the principles settled by the written opinion filed in this cause and further according to the rules and principles governing courts of equity.

DECREE REVERSED AND CORRECTED IN APPELLATE COURT AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.