# CHARLESTON.

## SEWING-MACHINE CO. *v.* DUNBAR.

\*(GREEN, JUDGE, absent.)

Submitted January 22, 1889.—Decided March 4, 1889.

1. BILL OF REVIEW—NEWLY-DISCOVERED EVIDENCE.
   The filing of a bill of review for newly-discovered evidence is not a matter of right but rests in the sound discretion of the court.

2. BILL OF REVIEW—NEWLY-DISCOVERED EVIDENCE.
   A bill of review for newly-discovered evidence will not lie, where the evidence is simply confirmatory or cumulative. It must be decisive in its character, such as ought, if true, upon rehearing to produce a different decree, and of which the party was ignorant at the time of the decree and could not have learned by the exercise of reasonable diligence.

3. BILL OF REVIEW—NEWLY-DISCOVERED EVIDENCE.
   If a party allege the finding of a document since the decree, which would have been relevant evidence for him on the hearing, and knew of its existence and contents, though he made diligent search for it before the decree without finding it, yet if he could have proven its existence and contents by the evidence of witnesses, he should have done so, and can not on that ground sustain a bill of review.

4. BILL OF REVIEW—NEWLY-DISCOVERED EVIDENCE.
   Where the court of appeals decides the principles of a cause and sends the cause to the Circuit Court with a mandate to enter a decree of a specific character and for further proceedings merely to execute it, though there can not be a bill of review for error of law, yet there may be for after-discovered matter. But to allow a bill of review in such case great caution should be observed, and the new matter should be very material and newly-discovered and unknown to the party at the date of the decree, such as could not have been discovered by the use of reasonable diligence, and not simply confirmatory or cumulative in its nature, but decisive in effect ; such as ought, if true, to call for a different decree.

*Loomis & Tavenner* for appellant.

*L. Smith* for appellee.

---

\*On account of illness.

BRANNON, JUDGE:

A report of a decision in this cause is to be found in 29 W. Va. 617 (2 S. E. Rep. 91,), where will be found a statement of the facts, as the case then stood. When the case went back to the Circuit Court of Wood, that court under a mandate from this court entered a decree giving the plaintiff its debt, annulling the deed dated 11th July, 1881, recorded 2d June, 1884, and subjecting the two tracts of land mentioned in that deed to sale. Then, it seems, James T. Dunbar applied to the Circuit Court for leave to file a petition in the nature of a bill of review, and leave was refused. This is not incorporated in the record; but is not material here. Later he presented what styles itself an "amended petition," and asked leave to file it as in the nature of a bill of review ; but on the 18th of February, 1888, leave was refused, and he appeals here.

This petition avers, that since the mandate of this Court and the entry of the decree of sale of the 6th March, 1886, he had discovered new and material evidence, of which he was ignorant at the time of the entry of said decree ; that before the entry of said decree he had without success diligently searched for an original deed executed by and between John V. Dunbar, Thomas J. Bunbar and petitioner dated July 11, 1881, not recorded, executed pursuant to and was evidence of the agreement, in consideration of the performance of which John Dunbar executed the deed, which had been set aside; that in March, 1887, while removing his household goods he discovered the deed acknowledged, as appears by Justice Bickel's certificate thereto, by Thomas J. Dunbar, 10th October, 1882, and by John V. Dunbar and petitioner, 6th April, 1883. He files this deed, which conveys the two tracts making together ninety four acres to Thomas J. and James T. Dunbar in consideration of their agreement to keep him and pay his debts.

He files an affidavit of Bickel stating, that Thomas J. Dunbar acknowledged the deed as stated in the certificate, and that on April 6, 1883, John V., James T. and Thomas J. Dunbar were together on the land described in the deed, and he was requested to take and certify their acknowledgement

of the deed; that John V. Dunbar said the land was James T's, and the matter had been neglected and ought to have been fixed a good while before; that a deed was produced and acknowledged by the Dunbars, and he certified it, and it was discovered, that the wrong deed had been acknowledged, and that the deed acknowledged was a deed from John V. to James T. and Thomas J. Dunbar for another tract, and bore date May 19, 1876, which deed is also filed, (it is similar in consideration and phraseology except as to the description of land with the other deed;) that thereupon the deed dated July 11, 1881, was produced and acknowledged, and certified as to acknowledgement by John V. and James T. Dunbar, and the deed was left on a table in the house on the land, where James T. and John V. Dunbar lived. Bickel further states, that he knew James T. Dunbar had possession of the land before 6th April, 1883, and he had time and again seen him working on it clearing and exercising acts of ownership over it and treating it as his own, and he had cleared twenty acres, and remodelled the house. He further states, that since 11th April, 1883, he had lived about five miles from James T. Dunbar in a different neighborhood and did not know of this suit until 1887, when he heard of the decree for its sale, and he did not mention the subject to James T. Dunbar and did not talk with him on the subject until July, 1887.

The petitioner further states, that he had found in a box said original deed for the tract of 100 acres, dated 19th April, 1876; that both were in the writing of Thomas J. Dunbar; that neither of said deeds was ever delivered to him or Thomas J. Dunbar, but both were written pursuant to an agreement to that effect and at the instance of John V. Dunbar. He files an affidavit of James L. Bailey, that in July or August, 1882, John V. Dunbar brought to Bailey, a justice, a deed, which had been already signed by John V. Dunbar and, as he remembers, by James T. Dunbar and either Thomas J. or George H. Dunbar; that John V. acknowledged it, and left it to be acknowledged by the other parties, and he kept it some weeks, and returned it to John V. without any certificate, as the others had not acknowledged it. Bailey states, that he believes it to be the same deed referred to in Bickel's affidavit. He also states, that

on said occasion John V. Dunbar told him, that the land belonged to the boys. Petitioner files an affidavit, and gives it effect in his petition, made by Churchill Baxter, that he was near by and heard a conversation on Market street, Parkersburg, near Atkinson's store, between Handley, agent of plaintiff, and James T. Dunbar, wherein he heard James T. Dunbar tell Handley, when speaking of the sewing-machine business, that he and his brother owned the land, and if Tom wanted to go into the business he would buy his interest in the land. He also alleged the contents of and filed an affidavit of Preston Groves, that Groves heard a conversation near the well on the farm between James T. Dunbar and Handley about the sewing-machine business, and heard James T. Dunbar tell Handley, that the land belonged to him and his brother, and if his brother wanted to go into the business, he would buy his interest in the land and thus help him into it.

Petitioner further states, that, after his original petition had been presented to the Circuit Court for review and refused, George A. Loomis called his attention to facts set out in Loomis's affidavit filed with petition. It is to the effect, that on April 19, 1876, John V. Dunbar came to him as attorney to get him to prepare some papers stating, that he and his wife were getting old and feeble, and that he had talked to his three sons, James, George and Thomas, and thought that he could make arrangements with them to pay his debts and support him and their mother; in consideration of which he proposed to convey to them his farm, and requested Loomis to draw a deed looking to that arrangement, which he could use as a form to copy from, if the boys were willing to go into it; and that he wrote the deed before referred to of 19th April, 1876; and doubting whether the lien therein retained would compel the boys to comply with what was incumbent on them, he drew a separate contract to be signed by them; that afterwards he said this arrangement as to the Valley Mill farm, to which the form relates, had fallen through, and he returned the form so drawn; and Loomis thinks Dunbar told him he had made similar arrangements as to the Walker's Creek farm, but did not remember the details of what Dunbar told him

as to this, (as to this, Loomis' affidavit is indefinite;) that these papers had been filed away, and had only recently come to light; he had forgotten them; and that he did not tell James T. Dunbar of them until after the decision of the case by this Court, and he could not have learned it by any diligence.

The single question for the decision of this Court is: Did the Circuit Court properly deny James T. Dunbar leave to file his petition as a bill in the nature of a bill of review? We think the Circuit Court was correct in so ruling. The application was based on newly-discovered matter, not on error of law apparent.

1. As to the discovery of the deed of May 11, 1881. What is its office in this cause? Not to confer title; for appellant says it was not delivered and could not take effect as a deed. Right under it was not claimed in the pleadings, on which the decree rested. A similar deed dated 11th July, 1881, for the same land between the same parties was in the record, when this case was formerly before this Court. James T. Dunbar as witness denied its existence, declaring the agreement verbal. On cross-examination he was made to admit it and to file it, and he declared it had been drawn up at the time of the alleged contract between John V. Dunbar and James T. and Thomas J. Dunbar, but never acknowledged or delivered. He said it was at home in his bureau drawer. He denied any other memorandum than that unacknowledged deed; but now he produces one regularly acknowledged. This deed is identical in language with the other; a *fac-simile.* He then in defence, relied on the deed to him alone, that is, the one recorded 2d June, 1884, annulled by the decree. He did not want to rely in any way on the deed unacknowledged, commented upon by Johnson, P., because that gave half the tract to the debtor, Thomas J., and would make half of it liable. He risked his cause on the deed to himself alone.

Now, after this Court has overthrown that deed as and because infected with fraud, when *in extremis*, as a *dernier* resort, he evokes from its hiding place this deed just like the other two in date, consideration and language, except that in one James T. is sole grantee, in the other two he and Thomas J.

Dunbar. For what purpose does he call it forth? To prove that this deed acknowledged as early as 10th October, 1882, and 6th April, 1883, reciting a contract between John V. Dunbar and his sons, whereby he was to convey the land to them in consideration that they pay his debts and keep him and his wife, is evidence of such a contract,—an honest contract,—and that a deed was prepared to execute it long before the indebtedness, and thus remove the taint of fraud in the deed the court passed on. It is used not to set up title, but as evidence to repel the charge of fraud. The main question in the cause was, whether the deed attacked was fraudulent. The evidence bore on that chief point. This newly-found deed is only more evidence on that same point. The discovery of this deed is, if new matter, merely evidentiary matter, simply evidence on a fact in issue. It is *factum probans*, not *factum probandum;* for the fraudulent or honest quality of the other deed was the *factum probandum.* We must call it, therefore, newly-discovered evidence bearing on the main point.

There has been a question, whether new evidence to a fact already in issue can be received to support a bill of review; but it seems, if it be not simply confirmatory or cumulative evidence in the case, but decisive, such as would on rehearing produce a different decree, it will justify a bill of review. It must be such as would produce a different decree. *Nichols* v. *Nichols*, 8 W. Va. 174, syll., pt. 3; *Douglass* v. *Stephenson*, 75 Va. 756. In view of the whole case and of the opinion of this court heretofore expressed in it, I do not think this evidence is of that character or force. Before overturning a decree of any court on a bill of review on newly-discovered evidence, we should be clear, that, if true, it would command a different decree, because after a fair hearing it is to the interest of all, that the litigation should cease, especially as the filing of a bill of review is not a matter of right but lies in the sound discretion of the court. It may therefore be refused, although the facts, if admitted, would change the decree, when the court looking to all the circumstances shall deem it productive of mischief to innocent parties or from any cause advisable. *Nichols* v. *Nichols* 8 W. Va. 186. At any rate, it should be a clear case.

But what calls for greater caution before allowing the bill of review in this instance is the fact that this cause has been determined by this Court, and the decree was entered under its mandate. While the decree of the highest appellate court is not exempt from a bill of review for newly-discovered evidence, yet it has been held, that to sustain it in such case "the greatest caution should be observed, and the new matter, to be sufficient ground for the reversal of the decree, ought to be very material and newly-discovered, unknown to the party seeking relief at the time the decree was rendered, and such as could not have been discovered by the use of due diligence." *Henry* v. *Davis*, 13 W. Va. 256; *Campbell* v. *Campbell*, 22 Gratt. 649.

2. Another difficulty in the way of appellant is the fact, that this deed was signed by him and Thomas J. Dunbar, and he was present when his father executed it, and they all three acknowledged it, as appears by the certificate of Justice Bickel, and were all present when it was acknowledged by John V. and James T. Dunbar. Now, to get a re-hearing, he says the deed is new and material evidence, of the existence of which and its whereabouts at the date of decree, he could not have known by due diligence. Why not? He says he searched for it. Then he knew while taking evidence of its existence and contents, if he did not know of its whereabouts; and he could and should have proven its existence and contents by his own evidence, his brother's and Justice Bickel's. His evidence, that he searched and could not find it, must be taken with caution; for the opinion in this case in 29 W. Va. 617 (2 S. E. Rep. 91) holds his evidence untrustworthy, applying to it the maxim, *falsus in uno, falsus in omnibus.* If we tolerate such negligence in not proving the contents of a lost document, when three witnesses were attainable and known to the party, or permit him to say, that he could not find so important a paper in his possession or at his house, and come in after protracted litigation and undo a solemn decree, when will litigation stop? The suspicion arises, that as this acknowledged deed gave half the land to his brother, the debtor, its presence was not desirable, except as a weapon of defence in the extremest necessity. He says it was among his

household goods.   Strange that it could not be found.   This deed is the only point presented by appellant that requires much consideration.

As to the evidence of Baxter, Handley was asked by appellant on cross-examination, whether in a conversation on Market street, Parkersburg, near Atkinson's store, he was not told by him, that the land was the property of himself and his brother, and Handley denied it.   Baxter said, he heard appellant so tell Handley.   As to the evidence of Groves, Handley was asked, whether in a conversation on the farm near the well about the sewing-machine business, appellant did not tell him that the land belonged to him and his brother, and that if his brother wanted to go into the sewing-machine business, he would buy his interest in the land and thus help him into it, and he denied it and said, that on the contrary the appellant represented his father as owner. Groves says, he heard this conversation, heard appellant tell Handley what is indicated in the question, and appellant as a witness states, that he so told him.   Now, as to both Churchill's and Groves's evidence, we may say, that it is merely more evidence to show that appellant informed Handley that the land was not John V. Dunbar's, but his and his brother's; cumulative or corroborative merely, and not such as necessarily to produce a different decree.

The evidence of Bickel and Bailey, in so far as it gives declarations of John V. Dunbar, that his sons owned the land, and shows James T. Dunbar's possession and improvement of the land, is plainly only cumulative, and must have been known to appellant before decree, or could have been known by reasonable diligence.

The evidence of Loomis and the papers produced by him showing the desire of John V. Dunbar in 1876 to convey another tract to his sons to get them to keep him is either irrelevant or, if relevant, as tending to show such desire, and thereby rendering it probable, that some years afterwards he did make an arrangement with two of his sons to pay his debts and keep him in consideration of his conveying the ninety four acres involved in this suit, is only cumulative or additional evidence on matter involved in the decree, and not of a decisive nature to call for a different decree.

The decree of the circuit court of February 18, 1888, refusing leave to file said petition, is affirmed with costs to appellee in both courts.

AFFIRMED.