# CHARLESTON.

## BROWN *et al* v. NUTTER *et al.*

### Submitted June 5, 1903.—Decided November 7, 1903.

1. NEWLY DISCOVERED EVIDENCE.
   Newly discovered oral evidence, contradictory or cumulative in its nature, to be sufficient to sustain a bill of review, must like written evidence, be so indisputable as to be decisive of the case. (p. 84).

2. NEWLY DISCOVERED EVIDENCE.
   Newly discovered evidence which is of such a doubtful character as only to open up the case for further litigation will not sustain a bill of review. (p. 85).

Appeal and *supersedeas* from Circuit Court, Harrison County.

Action by Cordelia Nutter *et al* against Beeson H. Brown *et al.* Judgment for plaintiff and defendant appeals.

*Affirmed.*

EDWARD G. SMITH, M. F. SNIDER and EDWARD A. BRANNON, for appellees.

JOHN BASSELL, W. SCOTT and DAVIS & DAVIS, for appellants.

DENT, JUDGE:

"This is an appeal by Beeson H. Brown, Henry R. Smith, Gertrude Duncan and George L. Duncan from a decree of the circuit court of Harrison County, entered February 2, 1903, sustaining a demurrer to the bill of review filed, by leave of the circuit court, to review, upon the ground of newly discovered evidence, the decree of the Appellate Court entered on March 29, 1902, revising a decree of said circuit court in the cause of Cordelia Nutter against Beeson H. Brown and others, entered on June 8, 1901, by which decree of the Appellate Court the words 'natural gas and oil' were directed to be expunged and struck out of the deed made to said Beeson H. Brown by Cordelia Nutter and her former husband, William L. Strother." *Nutter* v. *Brown*, 51 W. Va. 598.

The newly discovered evidence relied on is to the effect that Matilda Flanagan and her two daughters, Sallie Johnson and Jennie Kerns, will testify that in the year 1891 Cordelia Nutter stated to them or in their presence, that she received one dollar more per acre than Matilda Flanagan and her husband received for their coal, because gas and oil was included in her conveyance.

This testimony was first brought to the attention of appellants by virtue of the following note written by one of the proposed witnesses as she says in the interest of justice, to-wit:

> "No 8 1902
> "Adamston, W. Va.
>
> "Mr.
> "B. H. Brown Dear Sir if you want any Evidence at court in that law Suit you are Having with G a Garrit and Dr arnett just call on me i will get you the best Evidents for you that you Ever Had yet
> "truly yourS
> "Mrs Sallie JohnSon"

The law governing this case has been fully settled by a former decision of this Court.

In the case of the *Davis Sewing Machine Co.* v. *Dunbar*, 32 W. Va. 335 (9 S. E. 237), in part second of the syllabus the rule is stated thus:

"A bill of review for newly discovered evidence will not lie

where the evidence is simply confirmatory or accumulative. It must be decisive in its character; such as ought, if true, upon rehearing to produce a different decree, and of which the party was ignorant at the time of the decree and could not have learned by the exercise of reasonable dilligence." *Nicholas* v. *Nicholas,* 8 W. Va. 174; *Wethered* v. *Elliott,* 45 W. Va. 436; *Douglas* v. *Stephenson,* 75 Va. 756.

To sustain a bill of review for newly discovered evidence, the duty devolves upon the plaintiff:

First, to produce evidence clearly decisive of the case;

Second, to show that such evidence could not have been discovered by due diligence.

It matters not whether the newly discovered evidence be oral or written, if it is decisive of the case, it will be admitted for the purpose of reversing a decree. The difference between oral and written evidence being that written evidence, when the making of the writing is admitted, is indisputable. A demurrer to a bill admits the indisputable character of such evidence.

On the other hand, a demurrer to a bill of review founded on oral testimony alone does not always admit that such oral testimony is true but that the witnesses will testify according to the allegations of the bill. Oral testimony therefore is nearly always open to dispute. To overthrow a decree of this character, the evidence must be indisputable. It must be so strong that on a review it will be decisive of the case and not merely open it up for further litigation.

If the appellants had produced a writing signed by Mrs. Nutter, wherein she admitted that she had received one dollar per acre more for her oil and gas, this would be decisive of the case, and would have justified a review thereof.

The fact that Mrs. Flanagan and her daughters will testify that Mrs. Nutter admitted in their presence that she received one dollar per acre for her oil and gas is not at all decisive of the case. For the reason that their evidence is open to dispute, being a matter of memory alone; by their own cross-examination; by other facts and circumstances and by other witnesses.

Hence to allow a review on their evidence is simply to throw the case wide open for further litigation and would be nothing more than granting of a new trial without sufficient justification therefor.

To set aside the solemn decrees of this Court on evidence so frail would be to throw wide open the door of equity to fraud and perjury, for defeated litigants would never allow a case to remain settled as long as witnesses could be discovered willing to testify as to admissions made by the successful party.

Equity regards all such attempts with a critical and suspicious eye to preserve the fountain of justice from being too easily polluted, and rightly requires that oral evidence to overthrow a decree, must be as indisputable and convincing as written evidence. The enforcement of such rule may operate harshly some times but it is far better, even though it does, to uphold rather than to destroy such a barrier to a sea of unknown troubles and endless litigation. However desirous we may be to defend the character of litigants for whom we may have a friendly regard, yet it is the part of justice to be blind to mat- ters extraneous to the record and to be governed by its revealings alone. The voluntary note written by one of the proposed witnesses, as she claims in the interest of justice, is very peculiar indeed. The spelling and composition show her to be a very illiterate woman and yet she claims the ability to get for Mr. Brown evidence, the best he ever had in his suit. Such illiteracy, knowledge of a suit and the weight and necessity of evidence coupled with so highly a developed sense of justice at so opportune a time, is a combination seldom found in womankind but is so rare as to excite a suspicion of its sincerity. Voluntary evidence under such circumstances is always open to suspicion, and must be regarded as of little weight instead of being decisive in its character, unless it be clearly indisputable.

In the case of *Reynolds* v. *Reynolds*, 88 Va. 152, (13 S. E. R. 395), the newly discovered evidence, though oral, was above suspicion, indisputable and decisive of the controversy. In this case, the demurrer being regarded as an admission of what the newly discovered witnesses will testify and not an admission of the truth of such evidence, the same must be regarded as disputable, indecisive of the controversy and in the light of facts, circumstances and evidence disclosed by and contained in the old record subjects to suspicion and doubt as to the sincerity or soundness of the witnesses' memories.

It is therefore wholly insufficient to justify a review of such decree.

Nor is it clear that, if the appellants had used the same diligence to discover the new evidence before the decree that they did afterwards, they would not have just as easily provided it then as now. For the first time, the appellants claim, in effect, in their bill that Beeson H. Brown paid Mrs. Nutter one dollar per acre for oil and gas. This is stated to be a fact fully known to Brown and the bill is sworn to by him. In the former suit, he filed an answer under oath, in which he made no such claim. If such were the truth, and he had set the same up as a defense and attempted to prove it on cross-examination of his agent and Mrs. Nutter and testified in contradiction to their testimony that such was his understanding of his purchase, the result might have been entirely different. If such had been his position and he had made any effort to obtain the evidence to sustain it, there can be no doubt that he could have easily, by the exercise of due diligence, obtained this newly discovered evidence. He made no such defense and therefore made no effort to obtain the evidence to sustain it.

The absence of such defense is one of the prime reasons that led the court to its former conclusions, as is plainly evident from the following three separate quotations from the former opinion, to-wit:

"It is not shown in evidence that the defendant purchased or paid anything for the oil and gas. He was buying the coal and if he could get the oil and gas thrown in he would take it. His sole reliance in this case is on the fact that they appear in the papers by the confessed mistakes of his agent. He does not claim that he bought and paid for them, but that, because of their valueless character at that time, the plaintiff was willing to let them go to secure the sale of her coal."

"This undenied instruction from his principal shows that he was not bargaining for the oil or gas, but if by deceitful means or otherwise without openly purchasing them he could obtain them he was willing to accept them without regard to the means employed. He does not as a witness claim that he purchased them or that he is out anything by reason thereof."

"He gave nothing for the property and is in *statu quo* without being put there."

These quotations all show that the court reached its former conclusion from the fact that appellant Brown neither claimed

or pretended to prove that he actually purchased the oil and gas at one dollar per acre or that he was out anything by reason thereof. If he did purchase the oil and gas and paid one dollar per acre as he now pretends to assert, he should have set up the same in his answer and sustained the same by his evidence. Having failed to do so when he had the opportunity and having thereby misled the court into a wrong decision, he is forever precluded from asserting the same even though it were the truth. It has passed into the domain of things adjudicated and there it must forever rest. *Sayre's Adm.* v. *Harpold,* 33 W. Va. 553.

This newly discovered evidence would have been admissable under the allegations contained in the pleadings of the former suit as tending to contradict the evidence of Mrs. Nutter and James M. Plant as to the agreement between them that the words "oil and gas" were to be stricken out of the deed but would not have been decisive of the case because not indisputable as aforesaid.

A bill of review does not lie to adjudicate matters already adjudicated except for error of law apparent on the face of the record or for new and after discovered evidence decisive of the case. It does not lie to let in evidence that might have had some weight, little or great, had it been introduced at the proper time, but only such as is of such force and weight as will forever end the case.

Appellant Brown was negligent in not setting up and claiming that he had purchased the oil and gas at one dollar per acre and this fact, if true, cannot be used as a ground to sustain the bill of review. Yet it is a potent fact in showing that he did not use due diligence to obtain it. A litigant seldom uses reasonable diligence to obtain evidence to sustain a fact on which he does not rely.

The main question, however, for determination is as to whether the fact that Mrs. Flanagan and her two daughters will testify that Mrs. Nutter said to them or in their presence, that she received one dollar per acre more for her coal because she included oil and gas, is decisive of the case, or in other words, is sufficient to reverse the decree attacked? The answer to this question must be in the negative for many reasons.

*First,* because the evidence is oral and not indisputable or decisive of the case.

*Second,* because the main fact which it seeks to establish was not relied on by the appellants either in their pleadings or evidence in the original litigation, but has all the marks of an after thought that places such evidence under grave suspicion.

*Third,* because it is not of sufficient weight as contradictory evidence to overcome the positive statements of Mrs. Nutter and James M. Plant that there was an agreement between them that the oil and gas was not to be retained in the deed but was to be stricken therefrom, sustained by the unexplained silence of the appellant Brown for whom Plant was acting and by other evidence and circumstances in and surrounding the case.

Instead of this new evidence being decisive of the case, the suspicions against it are equally as strong as the suspicions it seeks to raise.

For these reasons we find the conclusions of the circuit court right and affirm the decree.

*Affirmed.*

BRANNON, JUDGE, (*concurring*):

"Every distinct averment must be taken as true upon a mere application to file a bill of review." 76 Va. 21. In this case what do we take as true? Only the fact that the witness will state what the bill represents they will state? Or that what they say is true? In other words, simply that they will state as the bill represents. Or that their evidence is true, and proves that Cordelia Nutter made the admission specified? The case of *Sewing Machine Co.* v. *Dunbar,* 32 W. Va. 335, says that the new evidence must be such as, if true, ought not to reverse the decree. If what is true? Why the new evidence; the fact it goes to prove; that is, Cordelia Nutter's admission. The new evidence to sustain a bill of review must be "material, and such as, if unanswered, in point of fact, would clearly entitle the party to a decree, or would raise a question of so much difficulty as to be the fit subject of a judgment in the cause." 2 Beach, Mod. Eq. Prac. section 860. I conclude that on the demurrer we must take it that the new evidence is true, and that Cordelia Nutter made the admissions, not simply that the witnesses will so state. Then comes the question. What is the

force of that admission on this bill of review? Is it only cumulative? In *Grogan* v. *Railroad,* 39 W. Va. 415, I endeavored to define cumulative evidence. On the former hearing the question was whether Cordelia Nutter sold to Brown oil and gas as well as the coal. Brown gave evidence that she did; she gave evidence that she did not. Is not this admission only more evidence that she did? Evidence of admissions is weak evidence; but at present we cannot consider this argument because that rule is based on the fact that evidence to prove admissions is weak, not that the admission is itself weak; that the witnesses may have misunderstood the admission. Upon the bill of review we are assuming that the admission was made. Then, treating it as made, what is its effect? If unanswered and established does it call for reversal of the decree? I think not, because it is cumulative; more evidence to show that oil and gas were included in the sale. True, the evidence goes to prove a new independent fact not before in issue, that is, the admission; but that admission is only more evidence on the question whether oil and gas were in fact sold to Brown. I do not say that in all cases cumulative evidence is inadmissible; but I say that if allowed it must be so forceful as to leave no question of its effect to reverse the decree. The courts say it must be received with great slowness and caution, else there would be no end to a case, as more evidence bearing on the same issues can always be found. This admission does not, beyond question, call for a reversal of the decree. *Bloss* v. *Hull,* 27 W. Va. 503.