# Wheeling.

McFarland, Adm'r, et al., v. Douglass.

(Absent, Johnson, Judge).

Decided November 17, 1877.

1. Where there is such a conflict of evidence, that it is so nearly balanced, as to make it doubtful on which side is the preponderance, an issue ought to be directed; but where, though there be a conflict, it is not of such a character, no issue ought to be ordered.

2. Even after a verdict is rendered by a jury on an issue out of chancery, if, upon the proofs as they stood at the hearing, an issue ought not to have been ordered, it is the duty of the chancellor, notwithstanding the verdict, to set aside the order directing the issue, and enter a decree on the merits, as disclosed by the proofs on the hearing, when the issue was directed.

Appeal from a decree of the circuit court of Wood county, the Hon. Charles S. Lewis, presiding, rendered on the 10th day of July 1874, in a cause in chancery, in said court then pending, wherein Robert McFarland administrator of A. B. McFarland, deceased, and others, were plaintiffs, and William Douglass was defendant; allowed upon the petition of said administrator.

Moore, Judge, who delivered the opinion of the Court, furnishes the following statement of the case.

William Douglass and wife, on the 31st day of March 1865, made a deed to A. B. McFarland and W. A. Logan, with covenant of special warranty, in consideration of $3,000.00 in hand paid, for one hundred and forty-six

acres of land in Ritchie county, being the same patented to John Douglass by the commonwealth June 4, 1844, and by said John conveyed to said William Douglass by deed January 16 1849.

At rules in the clerk's office of the circuit court of Ritchie county A. B. McFarland, on the first Monday in May 1867, filed his bill in chancery against William Douglass, alleging that he and William A. Logan in the year 1865 were engaged in dealing in oil lands in Ritchie county; that Douglass "claimed to be the owner in fee simple" of said land; that the complainant and said Logan "believing said land to be oil territory, called upon the said Douglass to purchase of him said land, provided said Douglass could exhibit title for the same;" that Douglass exhibited to them the patent of June 4, 1844, from the commonwealth to John Douglass, also the deed of January 16, 1849, from said John to said William, which patent, and official copy of said deed he made part of his bill by exhibit therewith; that said William Douglass represented to them, that said John Douglass entered into possession of the land under said patent, and enjoyed the same until he conveyed it to said William, and that he, William "had owned and possessed said land continually under and by virtue of the deed from the said John until the time of the proposed purchase" by the complainant and Logan; that he further represented to them that he had a clear title in fee simple; "that he had owned and occupied the same for about twenty years; and that there were no adverse claimants to said land, that he, said William, knew of; "that believing the representations of said William to be true," he and Logan completed the purchase of said lands for $3,000.00, and Douglass and wife executed the deed therefore with special warranty, exhibited with the bill; that confiding in the representations of the said William, so made to him and Logan in relation to the title, "and believing they were obtaining a good, unincumbered title to the same, they did not insist upon a

deed with covenants of general warranty;" that after the purchase he "was informed, that said William had no title to the same, and that the same had been recovered from the said William in an action of ejectment in the circuit court of Ritchie county by John S. Phillips and others, against one Robson and others, tenants of said William;" that not having heard of such proceedings prior to said purchaser, and wishing to satisfy himself of the truth of such information, complainant went to Ritchie Court House, and found the record of the proceedings had in said suit in ejectment (a copy of which record he filed as part of the bill); that said William knew, at the time of the said purchase, of the recovery had in the ejectment against his tenants; that Douglass knew at the time of said sale that he had no title to the land and that his claim thereto was worthless, and that the land was held by better and older title; that it was the representation, and statements of said Douglass in relation to his said title that induced said complainant and Logan to purchase the same and pay the large sum of $3,000.00 for it; that such representations and statements were false and fraudulent, and were made to deceive and to induce the complainant and Logan to purchase the land; that since said sale Logan had sold his interest in the land to complainant; that, by reason of the false and fraudulent representations, the contract of sale and deed conveying said land to them by Douglass are void; and that complainant has a right to recover back the purchase money so paid, and interest; and he prays that Douglass answer under oath, and that the deed be " set aside, cancelled and annulled as false and fraudulent;" and that the $3,000.00 with interest thereon from March 31, 1865, be refunded to complainant, &c. The bill was not sworn to. Douglass filed his answer under oath September 21, 1867, to which complainant replied generally.

By his answer, Douglass admits, that he claimed to be the owner in fee simple of the land in the bill men-

tioned; admits, " that they called upon him and stated their desire to purchase the same, but not as stated upon any condition in relation to the title thereto ;" respondent admits that he stated to them that he " claimed the title under a patent to John Douglass and a conveyance from said John to respondent ; he admits that he represented to them that he entered into possession of the land under his purchase from John Douglass, who was, and had been, in possession of the same, claiming it under his said patent, and that said respondent was at the time of said sale to complainant and Logan, still in possession thereof;" but "denies that he ever at any time represented to said complainant and said Logan that he had a clear title to said land in fee simple, or otherwise; or that he had owned and occupied it for about twenty years or any other period mentioned, or that there were no adverse claimants to said land ;" that "on the contrary, respondent stated to said complainant and Logan, before said purchase, that there were others who claimed said lands adversely to him ; and that such claimants had served notices of some kind upon his tenants, in relation to said land, and for these reasons, respondent refused to covenant for a good title, or warrant his claim thereto against any other than himself and heirs ;" that " it is not true that the complainant and said Logan did not insist upon a deed with covenants of general warranty for the reason of any confidence in the representations of the respondent made to them at any time, or for any other reasons known to respondent except that they knew, and had been assured by respondent that he would not for that sum ($3,000.00) make to them any such deed ;" that he " did not then know, nor does he now know that the said land is not unencumbered, or that a good and perfect title did not pass by his deed ; he only knew that he did not undertake, promise or assure the said complainant and said Logan that he would make, or that they would get such title by his said deed of conveyance ; and they so

well understood the whole transaction, and they took the conveyance at their own risk." He further denies " that he had any knowledge at the time of the sale of said land," or that " he still knows that there has ever been any such recovery against him or any of his tenants" in any such action of ejectment by Phillips. He " denies that he knew at the time of said sale, or even knows yet, that he had no title to said land, or that the same was held by an older or better title, or that respondent's title thereto was worthless, or that complainant and his partner took no title under the said conveyance; he believing then and still believes that his title to said land was good and better than any other to the said land; but he did not and would not warrant against any other title, and so told and assured the said complainant and the said Logan, without a much larger consideration was paid him therefor." He denies " that any statement made by him to them in relation to said title was false, or made to deceive them, or induce them to purchase said land."

1877.
Special Term.

McFarland,
Adm'r, et al.
v.
Douglass.

Depositions were taken by both parties.

On the 8th of April 1871, the court directed an issue to be tried by jury, viz : " *Whether the defendant, before the contract of sale, on the 31st of March 1865, represented to the complainant and William A. Logan, that he had owned and occupied the land in controversy for about twenty years, and that there were no adverse claimants to said land that he knew of, and if so, whether at the same time he did know that there had been recovered from him, or any of his tenants, the said land in an action of ejectment, in the circuit court of Ritchie county, by John S. Phillips and others, and whether at the time said contract was concluded, the said McFarland or Logan knew of adverse claimants to said land, or the recovery thereof, from said Douglass or his tenants by judgment of the circuit court of Ritchie county.*"

On the 4th day of December 1872, upon motion of the complainant, the cause was transferred to the circuit

81

court of Wood county, and was therein docketed September 4, 1873; and was afterwards, upon the death of McFarland, revived in the name of his heirs, and the cause ordered to be proceeded in in the name of Robert McFarland, administrator of A. B. McFarland, deceased.

On the 26th day of June 1874, the issue theretofore directed was tried; and the jury found: " *First. That the defendant did, before the contract of sale on the 31st of March 1865, represent to the complainant and William A. Logan that he had owned and occupied the land in controversy for about twenty years, and that there were no adverse claimants to said land that he knew of; and we further find, that the defendant did not know at the same time, that there had been recovered from his tenants the said land in an action of ejectment in the circuit court of Ritchie county, by John S. Phillips and others; and we further find, that the said McFarland and Logan then knew, that there were adverse claimants to said land; and we further find, that the said McFarland and Logan did not know, that the tenants of said Douglass had been dispossessed of said land by a judgment of the circuit court of Ritchie county.*"

The finding and the orders in relation thereto, having been certified to the chancery side of said court, the said court, on the 10th day of July 1874, the Hon. Charles S. Lewis presiding, set aside the order directing said issue and the verdict rendered thereon, and dismissed the complainant's bill, with costs. From said order, said Robert McFarland appealed to this Court.

*John A. Hutchinson,* for appellant:

1st. The representations made by the appellee to the vendees were material, were relied on, and were false: *Rawlins* v. *Wickham,* 3 D. & J. (60 Eng. Ch. R.) 304; *Gerhard* v. *Bates,* 2 Ellis & Blackburn 488; Kerr F. & M. 53, 54, 55, 75; *Shin* v. *Croncher,* 1 DeG., F. & J, 518; *Laidlaw* v. *Organ,* 2 Wheat. 781; *Hunt* v. *Moore,* 2 Barr 105; *Hazard* v. *Irvin,* 18 Pick. 95; *Mason* v. *Chappell,* 15 Gratt. 572; *Rennell* v. *Sprye,* 1 DeG., M.

& G. 708; *Mason* v. *Crosby*, 1 Wood. & M. 342; *Warner* v. *Daniels, ibid* 90; *Smith* v. *Bobcock*, 2 *ibid* 246.

2d. In making the purchase the vendees were entitled to trust to the integrity of the vendor: *Smith* v. *Robertson*, 24 Ala. 312; *Lainer* v. *Hill, ibid*, 554; *Yates* v. *Prior*, 5 Eng. 58.

3d. Equity will give relief where the vendee has taken a deed of covenant with general warranty, even though there be no fraud alleged: *Koger* v. *Kane*, 5 Leigh 606; *Clark* v. *Hardgrove*, 7 Gratt., 399; *Renick* v. *Renick*, 5 W. Va. 285.

4th. Taking special warranty does not affect the question if the vendor has made false representations, whether knowingly or not, if the vendee accept the bargain supposing the representations to be true: 1 Mad. Ch. 208; *Smith* v. *Richards*, 13 Pet. 26; *Ainslie* v. *Medlicott*, 6 Ves. 21; *Jones* v. *Taylor*, 6 Gill. & J. 54.

*C. Boggess*, for appellee, cited:

*Wise* v. *Lamb*, 9 Gratt. 294; 2 Par. on Con. 270; *Beale* v. *Seively et al.* 8 Leigh 672; Story's Cont. §508, 510, 514; 1 Greenl. Ev. §277, 282.

MOORE, JUDGE, delivered the opinion of the Court:

The appellant insists that "it was error to set aside the verdict of the jury upon the issue directed, the issue being properly ordered."

It appears from the order directing the issue, that the court then heard the cause "upon the bill, answer of the defendant, replication thereto, depositions and exhibits." It does not appear from the record that any new testimony was heard before the jury upon the trial of the issue; therefore the court was in possession of the same evidence at the time it directed the issue, that the jury had at the trial thereof.

It is argued by the appellee, that "instead of directing the issue, the court should have dismissed the bill, because the proof did not sustain any allegation of false

representation, as against the answer of Douglass denying the same," and *Wise* v. *Lamb*, 9 Gratt. 294 was cited by him.

It must be borne in mind that, at the time the case of *Wise* v. *Lamb* was heard, the law then existing gave a different effect to an answer, which met by a full, direct and explicit denial the material allegations of the bill, than is now given by our Code. At that time such an answer was not only evidence for the defendant, but was conclusive in his favor, unless overcome by the satisfactory testimony of two opposing witnesses, or of one witness corroborated by other facts and circumstances, equivalent in weight to a second witness; and where not so overcome, the court would neither make a decree nor send the case to be tried at law, but would simply dismiss the bill (Lee, Judge, in *Wise* v. *Lamb*, 9 Gratt. 300). But under our Code, chap. 125, §59, "the effect of such denial shall only be to put the plaintiff on satisfactory proof of the truth of such allegation, and any evidence which satisfies the court or jury of the truth thereof shall be sufficient to establish the same." And in *Nichols* v. *Nichols's heirs*, 8 W. Va. 174, this court held, that the 59th section "applies as well to answers to bills filed prior to the time the Code took effect, in the causes then pending and undetermined, as to answers filed subsequent to the time the Code took effect; although said section lessens the force and effect of an answer, as evidence in the cause."

The bill and answer in this cause were filed prior to the time said 59th section took effect, but as the cause was pending and undetermined when that section took effect, the answer stands on the same footing as that in *Nichols* v. *Nichols's heirs*. Hence, the *complainant* in this case "is put on satisfactory proof of the truth of his allegations," and the *onus* is on him "to satisfy the court or jury of the truth thereof."

The object of the bill was to set aside the deed from Douglass to the complainant and Logan, and to enforce

the refunding of the purchase money, upon the ground that Douglass had, by *false* and *fraudulent representations*, induced them to purchase the land. The defendant has by his answer given a full, direct and explicit denial to the allegations of false and fraudulent representations; therefore without satisfactory proof of the truth of the allegations it is plain that the court should have dismissed the bill, instead of directing an issue to be tried.

In the causes of *Smith's adm'r* v. *Betty, &c.*, and *same* v. *Thurman, &c.*, 11 Gratt. 752, it is decided (citing *Pryor* v. *Adams*, 1 Call 382, and *Wise* v. *Lamb*): "If, upon the state of the proofs at the time an issue is directed, the bill should be dismissed, it is error to direct it; and although the issue is found in favor of the plaintiff, the bill should notwithstanding be dismissed at the hearing."

To ascertain the state of the proofs in this cause, at the time the issue was directed, it will be well to consider what the court called in the assistance of the jury for, and apply the proofs to the inquiry made by the issue directed. The issue directed was to try: First, "whether the defendant, before the contract of sale on the 31st of March 1865, represented to complainant and William A. Logan, that he had owned and occupied the land in controversy for about twenty years, and that there were no adverse claimants, that he knew of."

Douglass, in his answer, denied that he had made such a representation, but that he had stated to them "that he claimed the land under a patent to John Douglass and a conveyance from said John," and "that he entered into possession of said land under his purchase from said John Douglass, who was and had been in possession of the same, claiming it under his said patent, and that said respondent was, at the time of said sale to complainant and Logan, still in possession thereof;" and also, that he "stated to said complainant and Logan, before said purchase, that there were others who claimed said lands adversely to him, and that such claimants had served

notices of some kind upon his tenants in relation to said land." It appears from the exhibits with the bill, that the *patent* to John Douglass was dated January 31, 1845, and the deed from John Douglass to William Douglass was dated January 16, 1849.

On the part of the complainant the said William A. Logan deposed, that he "never talked to Wm. Douglass or his sons about the land at any time, except on the morning they showed us the land;" that Wm. Douglass showed him "a patent to his brother, (father) which patent was twenty-one years old. He said his father deeded the land to him. He showed me the deed, and told me at the same time that they had had possession of the land twenty-one years; and that the title to said land was perfect and indisputable; and that he would make us a good title if we would purchase it."

On behalf of the defendant William Hamilton deposed, that he "was present when Logan and McFarland were purchasing the land or contracting for it, I heard Mr. Douglass tell Logan and McFarland, that writs of ejectment had been served on his tenants but that they never served any on him, and that he would just make them such a deed as he had for the land, that he would not make a general warranty deed. This is all the conversation I have any recollection of hearing in regard to it."

James H. Harris testified in behalf of defendant, that he leased the land of Andrew Douglass" in the spring of 1864, commencing on the 1st day of April 1864. A few days prior to the 1st day of April the contract was entered into. I understood when I was leasing the land that I was leasing the land claimed by the defendant, Wm. Douglass, I paid a little rent, $2.50, just before the end of the year 1864." On cross-examination he stated, that he had to take the lease, or suffer the consequences; that is, I should not get possession of the land if I did not." In his deposition taken for complainant said Harris testified "I went there as

1877.
Special Term.

McFarland,
Adm'r, et al.
v.
Douglass.

Peterson's tenant in the first place, in the Spring of 1864, on the 9th of April. The persons who lived there before me were John M. Farr and his father." "The Farrs held said land as the tenants of William Douglass. I have never been the tenant of anybody on that land except of Peterson and the parties purchasing under him." " Mr. Douglass threatened me that he would throw me out if I moved on that land, unless I rented from him: I then leased from him. He said he would not charge me much for the rent, a couple of dollars or so; to say that I had rented from him. And in order to keep peace and satisfy him, I rented for a year from him, and paid him $2.50. At the time I went on the land as the tenant of Peterson, I did not know, as I remember, that Douglass had any claim on it, I was not acquainted with the circumstances at the time; at the time I actually moved on the land, I became aware that Douglass claimed the land."

Andrew Douglass testified that he " leased the land to Jas. H. Harris for my father, the defendant, Wm. Douglass. Mr. Harris wrote the lease at Cornwallis." " Mr. Harris paid me the rent that was due. The lease was made about the 1st of April 1864.

Wm. Donglass, Jr., testified that said, " Harris came to me at Harrisville in the month of March 1864, during the court of that month ; he asked me about the renting of the place, told me he wanted to rent it. I told him my brother would be there that day, and as he lived on the place with my father, he generally attended to such business." On cross-examination by plaintiff this witness testified that the defendant, " had a tenant on the land every year up to the time he sold to Mc-Farland."

John M. Farr, who deposed for complainant, stated on the examination in chief: " I know nothing of the corners except what he, Wm. Douglass, Sr., told me. As well as I can remember he told me there were one hundred and thirty-six acres in the tract; I suppose it is

the same land from which I was dispossessed in 1862, I rented the land from William Douglass."

To the question, whether the land was held adversely to Douglass at the time of the sale by Douglass to Mc-Farland and Logan, he answered: "I know nothing about that." He further testified that Douglass told him " to stay there, " and he would see that he " was not put off the land ;" that he complied with the request, but Douglass did not comply with his agreement, and witness was dispossessed. On cross-examination by defendant witness stated, he was tenant of Wm. Douglass under a written contract, but did " not know whether the writings had run out at the time" he was dispossessed. He further stated that Douglass never said or told him anything to cause him to believe that the one hundred and thirty-six acres of land, of which he was dispossessed, " was the same land mentioned in the deed to McFarland, containing one hundred and forty-six acres."

Wm. Douglass, Jr., also further deposed, that he met Logan at Cario, in Ritchie county, before the deed was made for this land he says, " they were to run the land off and I went to carry the chain in making the survey. Mr. Logan said to me there : ' I wonder if your father would not make a deed for double the amount of the consideration of the purchase money.' Said I to him: ' if there was something wrong in the title and ·my father should have to refund the money back, how would that be ? the consideration being double the amount he received ;' Mr. Logan said: ' the deed we get is only a quit claim deed ;' we could not get anything back at all in case the title was not good,' or words to that effect."

Now it is clear that the only direct evidence on the part of the complainant, as to the representations made by the defendant, is the deposition of Logan ; whilst on the other hand, the deposition of Hamilton sustains the answer of Douglass, as to what he did represent to McFarland and Logan. But I deem it immaterial as to what was the proof, as to the precise words Douglass

1877.
Special Term.

McFarland,
Adm'r, et al.
v.
Douglass.

used on the point submitted, as he virtually admits in his answer, that he represented to them he had owned and occupied the land for about twenty years, by admitting in response to the allegation of the bill, that he represented to them, "that he entered into possession of said land under his purchase from said John Douglass, who was and had been in possession of the same, claiming it under his said patent, and that said respondent was at the time of said sale to complainant and Logan still in possession thereof," the patent having been obtained January 31, 1845, and the deed made to McFarland and Logan by defendant March 31, 1865.

The complainant introduced no proof as to the alleged representation by defendant, "that there were no adverse claimants to the said land, that he knew of." Defendant denied having made that representation, and states distinctly in his answer, that on the contrary he "stated to said complainant and Logan, before said purchase, that there were others who claimed said lands adversely to him, and that such claimants had served notices of some kind upon his tenants in relation to said land; and for these reasons respondent refused to covenant for a good title or warrant his claim thereto against other than himself and heirs." He sustains that statement of his answer by the deposition of William Hamilton. And as to the time he held possession of the land, although it may be true some of his tenants surrendered, or attorned to other claimants, yet the complainant, by cross-examination of William Douglass, Jr., elicited the proof, that the defendant "had a tenant on the land every year up to the time he sold to McFarland," which testimony, taken in connection with the other depositions cited relative to the leasing of said land, would seem to sustain the answer of defendant as to his statement of possession and occupancy thereof.

The second inquiry made by the issue directed by the court was, whether the defendant, at the time of the con-

tract, knew "that there had been recovered from him or any of his tenants, the said land in an action of ejectment in the circuit court of Ritchie county, by John S. Phillips and others; and whether, at the time said contract was concluded, the said McFarland or Logan knew of adverse claimants to the said land, or recovery thereof from the said Douglass or his tenants, by judgment of the circuit court of Ritchie county." What was the state of the proofs as to this inquiry at the time the issue was directed?

The complainant alleges, "that after the purchase of said land by him and the said Logan, your orator was informed that the said William had no title to the same; and that the same had been recovered from the said William in an action of ejectment in the circuit court of said Ritchie county, by John S. Phillips and others, against one Robson and others, tenants of said William. Your orator not having heard of any such proceedings prior to said purchase of said William, and wishing to satisfy himself of the truth of such information, went to Ritchie Court House and found the record of the proceedings had in said suit in ejectment, a copy of which record is herewith filed, marked " Exhibit D," and prayed to be taken and read as part of this bill. Your orator charges that said William Douglass knew at the time of said sale to him and the said Logan, of said land, of said recovery had in said ejectment against his tenants (the same being prior to said sale, as will be seen by an inspection of said record).

Douglass answers, " that he does not know anything about the information received by complainant and said Logan, in relation to respondent's title, or the said land having been recovered from him by John S. Phillips in an action of ejectment in the circuit court of Ritchie county, as alleged by complainant; nor does respondent know how much, or what they had heard in relation to such proceeding, further than that respondent had informed them, that some notices or proceeding of some

sort, had been served on some of his tenants by some claimants of his land. Respondent denies that he had any knowledge at the time of the sale of said land, or that he still knows, that there ever has been any such recovery against him or any of his tenants in such action by said Phillips."

The record of the ejectment suit exhibited by the complainants, shows that John S. Phillips and others served the declaration in ejectment on Adam Robson, W. H. Lowther, Isaac Cunningham and Wm. Cunningham, Sr., on the 15th day of July 1856, for five thousand acres of land in Ritchie county, on the waters of Bond creek and Hughes's river; and filed the said declaration in the clerk's office of the circuit court of said county, at rules on the first Monday in August 1856.

On the 15th day of April 1857, the defendants pleaded not guilty &c.; and on the 21st day of September 1863, on motion of the plaintiffs, the suit was dismissed as to Robson and the Cunninghams, and continued as to Lowther; and, as appears from the record, on the same day the following order was entered in the suit:

" Pursuant to a written agreement, filed in this cause, between the said heirs of Wm. S. Phillips and the said Lowther, it is considered by the court that the plaintiffs recover of the defendant the tract of five thousand acres of land, patented to John Phillips the 20th day of February 1786, bounded as follows" &c.

The agreement referred to is dated September 20, 1863, and states that: " The defendant Lowther agrees that judgment shall be rendered at the present term of this court in favor of the plaintiff for the five thousand acres of land described in the declaration in this cause, the same having been patented to John Philips by patent dated February, 1786. And the plaintiffs on their part agree to sell to said Lowther a part of the land embraced in the Phillips patent aforesaid at the price of $4.00 per acre, the said piece being bounded as follows" &c.
*  *  *  *  *.

There is nothing in the record to show that either of the defendants were tenants of Douglass, or were occupying the land Douglass sold to complainant and Logan, save the allegation in the bill. There was no ejectment of Robson and the Cunninghams; and the recovery against Lowther was one of bargain and sale, and not by adjudication upon the merits of the cause; and was such a transaction, if he were in fact a tenant of Douglass, that bears upon its face such collusion with a stranger against his landlord, that equity should not sanction, for the tenant should not sacrifice the interest of his landlord for his own advantage: Story's Eq. Jur., §323; *Emerick* v. *Tavener,* 9 Gratt. 220.

On the other hand, Logan was not ignorant of the doubt as to title, because William H. Douglass deposed, that "sometime prior to the sale of the land in controversy between A. B. McFarland and William Douglass by said William Douglass, William A. Logan was in the clerk's office making inquiry about the said land in regard to the title. I remarked to him that I believed that the Phillips title was good, and supposed the land was in the Phillips survey; that parties had been ejected from said land, but that William Douglass himself had not." Yet in the face of all this enlightenment, which was certainly enough to have opened the eyes of, and placed a prudent man upon his guard against false and fraudulent representations of a vendor; the complainant and Logan accept from the vendor a deed with special warranty only, which certainly, under the circumstances of this cause, does not look as if the purchase was induced by *false* and *fraudulent* representations of the vendor, but does appear to have been made by McFarland and Logan, after weighing the chances, and being willing to incur the risk. *Caveat emptor.*

If I am right in this view of the state of the proofs at the time the issue was directed, then the principles laid down in *Commonwealth* v. *McClanachan's ex'or,* 4 Ran. 482, and *Johnston's adm'r* v. *Mendenhall,* 9 W. Va. 112,

govern this cause upon its merits, the complainant having purchased the land with covenants against the acts of the vendor, his heirs and assignees only. Under that view of the state of the proofs, the court might well have dismissed the bill without having directed the issue.

It appearing that the preponderance of the evidence at the time the issue was directed, was clearly in favor of the defendants, the court did not err, notwithstanding said verdict, to decree as it did; and therefore the said decree of the circuit court of Wood county should be affirmed with costs, and $30.00 damages.

JUDGES GREEN and RAYMOND concurred.

DECREE AFFIRMED.