Moncure, P.,
delivered the opinion of the court.
In 1860, John Cook, of the county of Rockingham, *265 died, leaving a large estate, real and personal, worth more than a hundred thousand dollars, but neither a wife or any issue. He left a will, however, dated in 1859, he gave his estate, after the payment of his debts, first to the children then living of his nephew Robert B. Cook, to the extent of the sum of $2,500; and, second, to all his brothers and sisters who might be living at his death, and all the children of his brothers and sisters, except Clarissa Mauek and John Lingle and their children, who were excluded by the will, as to the residue of his estate, which was to be divided among the said residuary devisees and legatees, share and share alike, so that each of his brothers and sisters living at his death was to have only a child’s part, or an equal share with each of his brothers’ and sisters’ children as aforesaid, except as aforesaid, subject however to certain provisos set out in the will, but which need not be here repeated.
On the 16th day of July, 1860, the said will was duly proved and admitted to probate in the county court of said county; and on the same day an order was made by the said court granting administration on the estate of said testator with his will annexed to his nephew and legatee, the said Robert B. Cook, who thereupon gave bond with security, according to law, as such administrator.
On the next day, to wit: the 17th day of July, 1860, and at the same term of the court at which the said will was admitted to probate and the said Robert B. Cook was appointed and qualified as administrator as aforesaid, another order was made by the same court revoking and annulling the order made on the previous day appointing Robert B. Cook as aforesaid, and appointing the said Robert B. Cook, Joseph H. Conrad, and George W. Miller, administrators with the will annexed of the said John Cook, who thereupon qualified as such according to law, by giving bond with security and taking the oath prescribed by law. This order was made by consent of the *266 said Robert B. Cook, and on the motion of the said Robert B. Cook, Joseph H. Conrad, and George W. Miller.
On the 20th day of August, 1860, on the motion of the-said Cook, Conrad and Miller, administrators aforesaid, it was ordered by the same court that they give a new bond as such administrators, which they thereupon accordingly did, with an increased number of sureties.
The estate of the testator, consisting of land and slaves of great value, and choses in action of great number and to a large amount, and the devisees and legatees being very numerous, forty-one in number, residing in different parts of this state and in other states, and many of them and their residences being unknown to the administrators,, the administration of the estate, of course, was attended with much trouble and difficulty, and required much time for its accomplishment. Of course very little progress could be made in the work before the war came on, in the spring of 1861, which, necessarily, obstructed and interposed difficulties in the way of the administrators during the existence of the war, a period of about four years, and for a long time thereafter • the testator’s estate not having been fully administered, and being in fact chiefly unadministered.
In 1866, the suit of Lingle & others v. Cook’s adm’rs & others, was brought in the circuit court of said county, by certain of the legatees and devisees of said John Cook, against his administrators and others, for the purpose of having a settlement of the administration account of his estate, and a distribution of the same among his devisees and legatees according to his will.
And in the next year, 1867, the suit of Eddins & others v. Cook’s adm’rs & others, was brought in the same court, by certain of the said devisees and legatees against the said administrators and others, for the same purpose.
These two suits having the same object, were consolidated by an order made therein on the 28th day of Octo *267 her, 1869, and various proceedings were had therein from time to time, in court and before a commissioner, until the 3d day of October, 1874, when a decree was made settling the principles involved. From which 'decree, Henry Lingle and others, devisees and legatees as aforesaid, and plaintiffs in the said suits, applied to a judge of this court for an appeal; which was accordingly allowed; and that is the case which this court has now to decide.
There are various assignments of error in the petition for this appeal, which will be considered and disposed of in the order in which they are made.
1. The first assignment of error is as follows: “ The sureties on the first bond, 16th July, 1860, ought to be held responsible for the devastavit of the administrator. There never were such proceedings towards removing the first administrator as were required by statute at the time. See Virginia Code, 1860, chap. 132, § 11. Robert B. Cook, one of the legatees was appointed administrator c. t. a. of John Cook, deceased, on the 16th day of July, 1860, after a considerable contest—the court having duly considered all matters presented in connection therewith— and qualified as such, with A. C. Bear, Jacob Bear, George W. Harnsberger, and E. H. Spindle as his securities, in a bond in the penalty of $135,000. They now claim to be relieved from any liability because there was subsequently granted administration to E. B. Cook, George W. Miller and Joseph H. Conrad, and new bond and securities given. Your petitioners claim that the securities in the first bond have never been discharged from liability as such. The appointment of additional administrators and execution of a new bond, was on their motion, without notice, &c., as required by statute. There was a grant of the administration to E. B. Cook, with all of the advantages attending or benefit to be derived from such administration, and this grant could not be revoked, unless upon good cause shown in the regular legal way.”
*268 It is an all sufficient answer to this assignment of error, that during the session of a court, or during the same term -of a court, the orders of the court remain within its breast, and may be revoked, annulled or amended at its pleasure, if the act be not done or obtained by fraudulent means. In this case, certainly, there is no evidence that the act was done or obtained by fraudulent means. In Cawood’s case, 2 Va. Cases, pp. 527, 545, the law on the subject was thus laid down : “A view of the decisions in this country and in England referred to by the counsel, leads us to the conclusion, that during the term the records-are in the breast of the court, and that amendments may be made in the proceedings of the court; but that after the term has passed, no amendments can be made, except of mere clerical misprisions.” See also 2 Tuck. Com. p. 45, and cases there referred to.
The case cited by the counsel for the appellants from 2 Va. Cases, p. 230—Ex parte Colin Clarke—is not at all in conflict with what is above stated as the law. It was there held that when an executor has been removed from office, and an administrator de bonis non has been substituted in his place under the act of assembly, another person having equal rights with the substituted administrator, cannot come in at a subsequent term and be allowed to administer, the power of the court over the subject having ceased.
Here, the power of the court over the subject had not ceased when the court during the same term at which R. B. Cook was appointed administrator, revoked and annulled his appointment, which, as we have seen, was a lawful act. The office of personal representative being then legally vacant, it was competent for the court of probate having jurisdiction of the case to fill the vacancy.
The court is therefore of opinion, that the circuit court 'did not err in the matter stated in the first assignment of error.
*269 2. The second assignment of error is as follows: ‘ i • ,. , . _ M TT. , court erred in discharging it. ÍS. Harnsberger on account of the bonds and notes purchased by him of the trators. Harnsberger knew that the bonds were the property of John Cook’s estate. He says they were payable to John Cook, and some to Robert B. Cook and George W. Miller, administrators of John Cook. He knew the estate of John Cook was not in such a condition as to require immediately $40,000.”
If payment of the debts of the testator, or legacies given by his will, required a sale of bonds or notes due to him, then such a sale, fairly made on reasonable terms, would not have been a breach of trust by the personal representative, but would have been a due execution of such trust; for wdiich, of course, neither he nor a purchaser from him could be made responsible. If such payment did not in fact require such a sale, but the purchaser was wholly ignorant and had no reason to believe that it did not, and in fact believed that it did; then, certainly, the purchaser, being in such case a bona fide purchaser for value and without notice, could not be made responsible, even though the personal representative should be responsible by reason of his guilty knowledge or other breach of trust in the transaction. If he act fairly and honestly, within the scope of his powers, then he is not responsible for the consequence of his act, even though it result unexpectedly to the loss of the trust subject or any part of it. And though he act unfairly and dishonestly in making a sale, which, fairly and honestly made, would be within the scope of his power and duty, a bona fide purchaser for value from him would acquire a perfect title against the testator’s estate. Dodson, &o. v. Sinupson & als. 2 Rand. 294.
In this case, if there was any unfairness or dishonesty on the part of the personal representative in making the sale in question, certainly there was none on the part of *270 ^ the purchaser in making the purchase; so far, at least, as the record shows. It therefore follows, as a necessary -consequence, that the court did not err in discharging R. S. Harnsberger on account of the bonds and notes purchased by him of the administrators.
There is nothing in the transaction itself, nor is there anything else in the case which indicates unfairness or dishonesty on the part of the administrators in making the sale. If it appeared to the administrators to be necessary to raise the sum of $40,000 in Confederate notes for the payment of debts and legacies due by the testator’s estate, then they had the power and it was their duty to pursue the best course of doing so which was practicble to them. We cannot say that it did not so appear to them, and that they did not pursue the best course of doing so which was practicable to them. On the contrary, the evidence afforded by the record strongly tends to show that it did so appear to them, and that they did pursue such course. The estate consisted largely of bonds and notes due to the testator. They could not be collected in specie, or even in what may be' called good money, if anything but specie could be called good money during the war, which commenced shortly after the qualification of the administrators and lasted nearly four years. They could not be disposed of on better terms or more to the interest of the legatees, as it no doubt appeared to the administrators, than by selling them for Confederate money, which was then the only, or almost only, currency of the country. The legatees were very numerous, residing in different parts of this state and in other states south, west and northwest of this. Naturally, they desired to have the estate settled up and to receive their respective portions of it as soon as possible. Those who resided in this state, or other states of the Southern Confederacy, were doubtless willing to receive Confederate notes on account of their respective interests in the estate, especially if they could receive two dollars *271 in such notes for one in the amount of said interests so paid. There seemed to be no practicable mode of obtaining payment otherwise during the long period of the war, or most of it. They therefore, no doubt, desired the administrators to dispose, as they did, of the bonds and notes which they sold to R. S. Harnsberger, which, doubtless, they could not have sold at a greater price than two dollars in Confederate money for one in the amount of said bonds and notes. It is probable, therefore, that the legatees, or most of them, residing in the Confederate States desired the administrators to make the sale they did to the said Harnsberger. And as to the legatees who resided in the United States, their portion was claimed by the receiver of the Confederate States, who demanded and received the same from the said administrators.
The cases referred to under this assignment of error in in the petition, viz: Fisher v. Bassett, &c., 9 Leigh, 119; Pinckard, v. Woods, &c., 8 Gratt. 140, are not at all in conflict with what has been before stated.
See also Staples & als. v. Staples & als., 24 Gratt. 225 ; Jones’ ex’ors v. Clark & als., 25 Id. 642, and Mills & als. v. Mills’ ex’ors & als., 28 Id. 442—which have a strong bearing upon this case and strongly support the decision of the court below now under consideration.
3. The third assignment of error is that “the court ■erred in applying the whole amount of G. W. Miller’s , legacy as a credit on the bond on which H. A. Kite is security, as there were other bonds, both with and without security, due by said Miller to John Cook’s estate; besides, in settling the administration account, he is found to be largely indebted to the estate. ■ And it is contrary to equity and justice to permit one person to have the entire benefit of what Miller would receive as legatee of John Cook, ■deceased.”
Where a debtor owes various debts and makes a payment, the application of the payment may be made by *272 himself at the time he makes it: and if he fail then to . « . ; make it, the application may be made by the creditor; and he fail to make it, the court before which the transac^on comes may direct it to be made according as may, in the judgment of the court, appear to be equitable and just, under all the circumstances of the case. The doctrine of the law on this subject has' been recently very fully considered by this court, in two cases in which the principles which govern it are laid down by the court. Those cases are Howard, &c. v. McCall, for, &c., 21 Gratt. 205, 206; and Chapman & als. v. The Commonwealth, 25 Id. 721, 754. The principles recognized in these two cases appear to conform to the principles, or most of them, recognized by the courts of other states, some if not all of wThose decisions on the subject are referred to in a work recently published. 7 Wait’s Actions and Defences at Law or in Equity, pp. 418, 423. On page 418 it is said that “ when a payment is made by a debtor to a creditor holding several dema'nds against him, the debtor has the right to direct the claim to which it shall be appropriated. If he fails to so, the creditor has the right to appropriate at his election. But in the absence of any particular application of a payment by either the debtor or creditor, the law will apply it, usually as the justice and equity of the case may require. See also 2 American Leading Cases, 5th edition, pp. 334-363, Field, &c. v. Holland, &c., and notes; and Smith v. Loyd, 11 Leigh, 512.
In this case the credit in question is not for a payment made by the principal debtor, but for a legacy given by the creditor to the principal debtor, by whom several debts are due to the creditor, some with and some without personal security, and the security being different for different debts. But the principles before stated seem to apply to this case. As stated in the decree appealed from, “Geo. W. Miller, with Hiram A. Kite and others as his sureties, was indehted by bond to John Cook, deceased, in the sum of *273 $2,000, with interest thereon from the 2d day of January, 1857, and judgment has been rendered on said obligation against said Hiram A. Kite, Joseph H. Kite and Miller, surviving obligors of themselves and G. W. Miller and Joseph H. Conrad, deceased, all of said obligors being sureties, except said George W. Miller, said judgment being subject to the following credits, to wit: $120 as of June 2d, 1858, and $100 as of March 18, 1859, which said judgment is now under the control of the general receiver in this cause; and that said -Hiram A. Kite has paid on said judgment the sum of $670.78 as of the 7th November, 1870; the legacy coming to George ~W. Miller must be applied first to the payment of his indebtedness to the estate, and to the extent of such legacy, the sureties in such obligation are entitled to be relieved from their liabilities as judgment debtors to the estate, and the said Hiram A; Kite is entitled to have refunded to him so much of the money paid by him as he may be entitled to upon a proper adjustment of said judgment and legacy as a credit thereon aforesaid.” And the court decreed among other things : “ Third, that the general receiver of this court adjust the judgment aforesaid under his control in the name of Kobert B. Cook, administrator of John Cook, deceased, against Hiram A. Kite and others in accordance with the principles of this decree, giving credit on said judgment for the amount of $2,490.07, as of the 15th day of April, 1873, and upon the basis of such credit adjusting the claim of the estate against the parties to said judgment, and refunding to Hiram A. Kite so much of the payment made by him as may be necessary upon this principle.”
The court is of opinion that there is no error in the said decree upon this subject.
4. The fourth assignment of error is that “ the court erred in dissolving the injunction awarded 17th Septem *274 ber 1869, and modified 28th October, 1869, and dismiss-mg the bill with costs.
The said bill and injunction were to restrain the collection of certain of the bonds and notes assigned by the administrators of John Cook to Robert Harnsberger as af°resaid by the said Harnsberger or his assigns, and to have them collected and applied as if the said assignment had never been made.
From what has already been said in this opinion, it appears that the said assignment was valid; from which it results, as a necessary consequence, that the court did not err in dissolving the said injunction and dismissing the said bill with costs.
5. The fifth assignment of error is that the court erred “in dismissing the bills and amended bills seeking to charge liability on securities in bond of July 16th, 1860, and July 17th, 1860, respectively.”
Of course the securities on the bond of July 16th, 1860, ' are not liable; the appointment and qualification of R. B. Cook as administrator on that day having been revoked and annulled on the next day, the liability of the securities in the administration bonds of R. B. Cook then and thereby ceased and was determined. And a new administration bond, with securities, having been given on the 20th day of August, 1860, by Robert B. Cook, Joseph H. Conrad and George W. Miller, who, on the 17th day of July, 1860, had been duly appointed and qualified as administrators with the will annexed of said John Cook, the said new bond, by express provision of the statute, relates back to the time of the qualification of the said fiduciaries, and binds the obligors therein for the faithful discharge of the duties of the office or trust of said fiduciaries from that time as effectually as if the said new bond had then been executed; and the sureties in the former bond and their representatives upon the execution of said new bond were by the said statute forthwith discharged, except as to *275 any matter for which a suit may have been then depend- . , _ ,, . , . , . mg on the former bond against any such sureties or their representatives, in which case such suit might have prosecuted to judgment or decree; but as to every such matter, the' new bond, without any express provision therein to that effect, would have bound the obligors therein to indemnify the sureties in the former bond against all loss or damage in consequence of executing the former bond. Code of 1849, ch. 132, §12, p. 550. Iu this case there was no such suit depending on the former bond when the new bond was executed as aforesaid.
It therefore follows, from what has been said, that the circuit court did not err in dismissing the bills and amended bills seeking to charge liability on securities in bond of July 16th, 1860, and July 17th, 1860, respectively.
6. The sixth assignment of error is that the circuit court erred “in ordering the bonds, judgments and funds in the hands of the general receiver, which had been assigned to Harnsberger, and had been confided to the said receiver during the pendency of the injunction order should be restored to X. S. Harnsberger.”
The assignment to said Harnsberger having been a valid assignment, as already shown in the foregoing opinion, it follows as a necessary consequence that the circuit court did not err in making the order referred to in said sixth assignment of error.
7. The seventh and last assignment of error is, that the said court erred “in allowing the administrators credit for investment in Confederate bonds, as such an order would not be proper, even though sanctioned by the proper Confederate court.”
A large amount of Confederate States treasury notes having come to the hands of the personal representatives of said John Cook in the course of the execution of their duty, and they being unable by reason of the war then *276 existing, and the number aud scattered location of the legatees of their testator, as before shown in this opinion, -to distribute the entire fund remaining in their hands after the payment of the debts of their testator, it was of course their duty to invest the surplus until it c'ould be so distributed. An investment of said surplus of Confederate notes in Confederate bonds bearing interest at the rate of seven or eight per cent, per annum was a reasonable and proper investment to be made by them under the circumstances of the case. The investment in question was so made; and it follows from what has been said that there was no error in the action of the circuit court in regard to the matter set forth in the said seventh assignment of error.
The court is therefore of opinion that there is no error in the decree appealed from, and that the same ought to he affirmed.
Decree affirmed.