## Staunton.

### DOUGLASS V. STEPHENSON'S EX'OR AND ALS.

October 14, 1880.

1. The enquiry in every case where a fiduciary is called to account and a liability is sought to be fixed upon him is, did he act in the particular transaction which is questioned, within the scope of his powers, with good faith and ordinary prudence? If he did so act, he is not responsible for the consequences of his act even though it result unexpectedly in the loss of the trust subject or any part of it.

2. These principles have been the guide of this court in the decision of the numerous Confederate cases which have come before it, and when it is said that "each case must depend on its own facts and circumstances at the time surrounding the executor" (*Williams' Adm'rs* v. *Skinker and Wife*, 25 Gratt. 507, 519), all that is meant is that the facts and circumstances, which are seldom, if ever, precisely the same in any two of these cases, but are more or less variant, must determine in each particular case whether the fiduciary has acted with that discretion and prudence which the rules of law require under those circumstances.

3. Circumstances under which a fiduciary is held exonerated from liability for the loss of the trust subject.

4. The cases in which this court has held it a breach of duty in a fiduciary to receive Confederate currency in discharge of ante-war obligations, were all cases in which the depreciation had become so great as of itself, when not attended with circumstances of justification, to be evidence either of bad faith, or lack of common prudence—cases generally in which the money was collected either in 1863 or 1864. But the same cases show that even when the currency was greatly depreciated, the fiduciary might be well justified in receiving it, on account of the necessities of the estate he represented, the condition of the debt, or by reason of other special circumstances making the collection proper.

5. For the requisites of a bill of review based on after-discovered evidence, see *Connolly* v. *Connolly*, 32 Gratt. 657, 660, 661; also *Carter* v. *Allen and others*, 21 Gratt. 241, 245.

On the 2d of February, 1857, David W. Barton, Girard F. Mason and John Stephenson qualified in the county court of Frederick county as executors of Wm. Stephenson, deceased, and the subsequent execution of the trust devolved almost exclusively on the said D. W. Barton.

On the 27th of February, 1862, the said executor collected $3,600 from John Stephenson, on account of a sort of conditional advancement of $5,000, made to him by his father, the testator, in his lifetime; which sum of $3,600 the said executor on the next day deposited in the Valley Bank at Winchester to the credit of Wm. Stephenson's executors, where the sum was allowed to remain. A few days afterwards, on the approach of the Federal forces, the bank, with all its assets and officers, was removed to Farmville, where it continued to transact its business until the close of the war. On the 28th of February, 1862, the said executor made a further deposit in the same bank, and to the same credit, of $2,551.88, that sum being the principal and interest of the balance due the estate by him on a settlement of his accounts in August or September, 1860, which money had been borrowed by the executor on the 22d of August, 1860, and his bond given in its stead. The bank failed, and the deposits were ultimately lost.

Margaret G. Douglass, a daughter and residuary legatee of the said Wm. Stephenson, filed her bill in the circuit court of said county—among other purposes—to hold the estate of David W. Barton liable for the loss of the said deposits occasioned by the failure of the bank; and after various proceedings the court, at the March term, 1878, decreed against the claim of the plaintiff, and also at the June term, 1879, denied her motion for leave to file a bill of review, upon the ground of error on the face of the decree; and from these decrees the plaintiff obtained an appeal.

*Holmes Conrad,* for appellant.

*Barton* and *Boyd,* for appellees.

BURKS, J., delivered the opinion of the court.

During the late war—in February, 1862—David W. Barton, as executor of William Stephenson, deceased, deposited in the Bank of the. Valley, at Winchester, two sums of money, aggregating $6,151.88, belonging to the estate of his testator, which was never withdrawn. He died in 1863. The failure of the bank and the loss of the deposits were among the results of the war. It was one of the objects of the bill filed by the appellant, a residuary legatee under Stephenson's will, to hold Barton's estate liable for this loss. The circuit court was of opinion that the estate was not liable, and such was its decree. Whether there is error in that decree this court is now called upon to decide on an appeal therefrom.

. The inquiry in this, as in every other case, where a fiduciary is called to account and a liability is sought to be fixed upon him, is, did he act in the particular transaction which is questioned, within the scope of his powers, with good faith and ordinary prudence—not with "sharp-sighted vigilance," as Chancellor Kent says, but with the same prudence and discretion that a prudent man under like circumstances is accustomed to exercise in his own affairs. If he did so act, "he is not responsible for the consequences of his act, even though it result unexpectedly in the loss of the trust subject, or any part of it." *Elliott* v. *Carter and others,* 9 Gratt. 541 ; *Thompson* v. *Brown,* 4 Johns. Ch. R. 619; *Davis, Commissioner* v. *Harman and others,* 21 Gratt. 194 ; *Single and others* v. *Cook's Adm'rs,* 32 Gratt. 262, 269.

These principles have been the guide of this court in the decision of the numerous Confederate cases which have

come before it, and when it is said, as sometimes it has been, that "each case must depend on its own facts and circumstances at the time surrounding the executor" (*Williams' Adm'rs* v. *Skinker and Wife,* 25 Gratt. 507, 519), all that is meant is, that the facts and circumstances, which are seldom, if ever, precisely the same in any two of these cases, but are more or less variant, must determine in each particular case whether the fiduciary has acted with that discretion and prudence which the rules of law require under those circumstances. If a fiduciary act within the scope of his powers, besides good faith, all that is required of him in any case is the exercise of ordinary prudence taken in reference to the circumstances under which its exercise is demanded.

It is not alleged in this case that the executor exceeded his powers in anything he did, nor is bad faith imputed to him by the record or by counsel in argument. On the contrary, it is admitted that he acted, as he doubtless did, in perfect good faith.

Did he exercise the prudence required by the circumstances surrounding him? Such prudence as men of discretion would generally observe in their own matters of a like character under the same circumstances?

First, as to the money collected of John Stephenson.

This was paid February 27, 1862, by a check on the Bank of the Valley at Winchester, and was on the next day deposited by Mr. Barton in the same bank to the credit of William Stephenson's executors, where it remained. A few days thereafter, on the approach of the enemy, the bank with all its assets and officers was removed to Farmville, in the interior of the State, as a place of greater safety than Winchester, and it there abided and transacted business till the close of the war.

It is contended that the debt owing by John Stephenson was contracted before the war—was payable in specie—

was not due when paid—and that the executor was not warranted in receiving payment in Confederate currency.

It is true that the debt was contracted before the war, and that it was not due, at least as much of it as was paid ; but by express provision of the will, the debtor had the privilege of paying it before maturity, if he chose to do so. He elected to pay it, and, we think, the executor did not commit a breach of trust in receiving it in Confederate currency, even if the check deposited had been then payable in such currency, which is not clear. In February, 1862, Confederate notes were but slightly depreciated, not more so than notes of specie-paying banks occasionally are in time of peace, and not to a greater extent than United States currency was at that time, and we think we may safely say that men of prudence everywhere throughout the State at that period of the war generally, if not universally, received payment of antecedeni debts in Confederate currency ; and we are not aware that it has been held by this court in any case that it was a breach of trust in a fiduciary to receive payment of a specie debt in such currency at so early a period in the war as February, 1862. On the contrary, it has been decided in several cases that persons holding fiduciary relations, such as attorneys and agents, were justified in receiving about that period such currency for their principals on debts contracted before the war. See *Pidgeon* v. *Williams' Adm'rs*, 21 Gratt. 251 ; *Hale* v. *Wall*, 22 Gratt. 424. In the former case the money was collected on the 21st day of February, 1862, and in the latter (so far as the collection was in Confederate notes) as late as May, 1862. It is a striking coincidence that in *Pidgeon* v. *Williams' Adm'rs* the money was collected about the same time, deposited in the same bank, in the same place, as in the case before us. In that case Judge Anderson, in the opinion of the court delivered by him, said, " The proof is, that at the time the money was received Confederate treasury

notes were worth only 10 *per cent.* less than gold, including exchange—that it was almost the only currency of the country, as good as any, and better than greenbacks, and that it was received and paid out by the banks, and was the currency generally, if not universally, used in all the transactions of life."

The opinion of the court in *Hale* v. *Wall* was delivered by Judge Bouldin. In that opinion he said: "At the dates of the collections, it is well known to us, as a matter of history, that the notes of the banks of Virginia and of other solvent banks, and Confederate States treasury notes were but little depreciated—not more, perhaps, than the paper currency of the United States, if so much; that they then constituted the only currency in Virginia, and were universally paid out and received by the banks of the State and by *prudent* men of business in all their transactions."

The cases in which this court has held it a breach of trust in a fiduciary to receive Confederate currency in discharge of ante-war obligations, were all cases in which the depreciation had become so great as of itself, when not attended with circumstances of justification, to be evidence either of bad faith or lack of common prudence—cases generally in which the money was collected either in 1863 or 1864. But the same cases show that even when the currency was greatly depreciated the fiduciary might be well justified in receiving it on account of the necessities of the estate he represented, the condition of the debt, or by reason of other special circumstances making the collection proper. The cases are numerous and need not be cited.

If the currency had been more depreciated than it was at the time Mr. Barton received it, we think he would still have been warranted in receiving it. The debt altogether was a large one—$5,000. It was not due and payment could not have been coerced. There was no security for it. The only property owned by the debtor (John Stephenson) was

an estate for his life in the property acquired under his father's will. War was flagrant and he was about to enter the military service as a soldier. His death would have been the certain loss of the debt. If he survived the conflict, as he did, the probability was that his estate would be devastated, as in fact it was. It could hardly be said, as matters then stood, that it was a breach of duty in the executor to receive payment in a currency so slightly depreciated. He might perhaps with more propriety have been chargeable with dereliction of duty if he had not received it, and the debt had been thus lost.

Having properly received the money, the next inquiry is, what was he to do with it? He did not convert a dollar of it to his own use. He did not keep it on his person or in his house. That would have been imprudent. He at once put it into what then appeared, as far as human foresight could reach, the safest custody. He made a deposit of it in the Bank of the Valley; and it is among the agreed facts that this was then "a solvent bank, in high credit, and by its charter was bound to pay in specie deposits made in it, and though that obligation was suspended by act of the assembly, it was bound to pay in bank notes." Nay, more. He did not mingle the money with his own funds, nor did he place it to his own individual credit in bank, but to the credit of "William Stephenson's executors." That he was justified in making this deposit would seem to be clear, and *Pidgeon* v. *Williams' Adm'r*, and *Hale* v. *Wall*, *supra*, are authorities directly in point.

Soon after the deposit was made the bank was removed, as before stated, to Farmville for safety and there continued its business until the war closed. Mr. Barton resided in Winchester, and it is agreed in the record that the Federal troops entered Winchester in March, 1862, and that from "this outset of the war Frederick county (in which Winchester is situated) was the scene of active military

operations, repeatedly changed hands between the contending armies, was occupied frequently and for months at a time by the Federal troops and cut off from all regular and safe communication with Farmville." It would thus seem to have been impracticable for Mr. Barton at any time after the deposit to make an investment thereof, if any such investment was contemplated, and we concur with the learned judge of the circuit court in opinion that the estate of the executor is not liable for the loss of the deposit.

Next, as to the other sum deposited, $2,551.88. This was deposited to the credit of "William Stephenson's executors," on the 23th of February, the day after the deposit already spoken of, and shared the same fate. It was Confederate currency, and, for the reasons before stated, no blame attached to the executor for making deposit in that currency, and he is not responsible for its loss, unless the circumstances, which differ somewhat from those attending the collection of the money from John Stephenson, make him so. Mr. Barton qualified as executor in February, 1857. He had two successive settlements of his accounts, of which no complaint is made. He made the third and last in August or September, 1860. It was probably not admitted to record, but it would seem that his account was stated by the commissioner and the balance against him ascertained to be $2,250.43. As there was no demand for this money at that time, he concluded to borrow it from the estate. He made no concealment of his purpose, but on the contrary took pains to furnish and preserve the evidence of what he did. He executed his bond or written obligation, showing the whole transaction precisely as it was, and filed it with the papers of the estate, and the amount he deposited replaced the sum he had borrowed with interest and exceeded it by about $100. The deposit was, no doubt, on account of the money borrowed and

intended to be in satisfaction of his liability for it.   This, we think, sufficiently appears from the record.   Now, if instead of borrowing the money himself, he had at once deposited it, as he afterwards.did, and had suffered it to remain on deposit without interruption, or if he had lent it to some other person and afterwards collected it and made the deposit, he would not, we think, have been liable for the loss.   His borrowing the money and afterwards returning it should not, it would seem, make any material difference in his liability.   Gain could not have been his motive, for the depreciation in the currency was too inconsiderable to furnish such a motive for his conduct.   He very probably made this deposit and that of the preceding day with the view to the investment required by the sixth clause of the testator's will, which directed the executors to loan out $4,500 five years after his death and keep it at interest during the minority of his two grandchildren, William Stephenson Mason and Gerard Bell Mason, for their education.   The five years had about expired and the amount of the two deposits was amply sufficient for the investment.   But it turned out, that by reason of the sudden removal of the bank and other circumstances before adverted to, the investment was impracticable.   It is unnecessary to pursue this branch of the inquiry further.   We are of opinion that the executor is not liable, under the circumstances, for the loss of the last named deposit.

It only remains to consider briefly whether the circuit court erred in refusing the appellant liberty to file her bill of review.   The bill prays a review for errors of law apparent on the face of the decree and by reason of the discovery of new evidence since the decree was rendered.   No errors of law are assigned, and, as we have seen, none exist. The requisites of a bill of review based on after-discovered evidence are well understood and have been frequently laid down by this court.   They are summarized in the late

case of *Connolly* v. *Connolly*, 32 Gratt. 657, 660, 661. See also *Carter* v. *Allen and others*, 21 Gratt. 241, 245.

One requisite is, that the new evidence must be material and such as, if true, ought, on another hearing, to produce a different result on the merits. Another is, that the evidence is not merely cumulative.

The papers filed with the bill relate to matters either already proved or admitted to be true, and at most furnish only cumulative evidence, and even if read in the cause ought not, in our opinion, to vary the decree complained of.

The court is of opinion, that there is no error in the decree appealed from, and that it should be affirmed.

The decree was as follows:

This day came again the parties by their counsel, and the court, having maturely considered the transcript of the record of the decrees aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that there is no error in the said decrees. Therefore, it is decreed and ordered, that the same be affirmed, and that the appellant pay to the appellees thirty ($30) damages and their costs by them in this behalf expended; which is ordered to be certified to the said circuit court of Frederick county.

DECREE AFFIRMED.