## Staunton.

### MILLER'S ADM'R v. COOK'S ADM'RS.

#### October 11th, 1883.

1. DECREES—*Interlocutory.*—When the further action of the court in the cause is necessary to give completely the relief contemplated by the court, the decree upon which the question arises is to be regarded not as final, but interlocutory.

2. APPELLATE COURT—*Decisions.*—Decision of such court upon a question decided by the court below, is final and irreversible; and upon a second appeal in the cause, the question decided upon the first appeal cannot be reversed, and such decision is alike conclusive whether the decree appealed from was final or interlocutory.

3. DECREES—*Interlocutory—Modification—When remanded.*—Where the decree affirmed, on its face, orders that the cause be referred to a master to take a further account and report, &c., such decree is interlocutory. Upon the cause being remanded to court below for further proceedings, such interlocutory decree may be modified upon exceptions to the master's report on motion or otherwise. *Steptoe* v. *Steptoe*, 1 Munf. 339; *Smith* v. *Blackwell*, 31 Gratt. 291.

4. SEQUESTRATION ACTS—*Unconstitutional.*—The U. S. constitution, prohibiting a state from passing a law impairing the obligation of a contract and discriminating against citizens of another state, equally prohibits a state from enforcing as a law, an enactment sequestrating debts owing to loyal citizens, come that enactment from whatever source. *Williams* v. *Bruffey*, 6 Otto, 176.

5. IDEM—*Personal representatives.*—The credit allowed to administrators, &c., for money owing from them to loyal non-residents during the late war and paid by them *under compulsion* of the Confederate sequestration enactment, rests on other and higher ground than such enactment· *Newton* v. *Bushong*, 22 Gratt. 629, *contra.*

Appeal from decree of circuit court of Rockingham county, rendered 1st December, 1880, in suit wherein Henry Lingle and

others were plaintiffs, and John Cook's administrators, D. H. Rolston, sheriff of said county, and as such administrator of Margaret Miller, deceased, and others, were defendants. This is the sequel to the case of *Lingle and als.* v. *Cook's administrators*, 32 Gratt. 262. In 1860, John Cook died in said county testate, leaving real and personal property of more than one hundred thousand dollars value, but neither wife nor child. By his will, which was admitted to probate 16th July, 1860, he bequeathed his estate, after the payment of his debts, to his brothers and sisters, and the children of such of them as might be dead. Robert B. Cook, Joseph Conrad, and George W. Miller, qualified as his administrators, c. t. a. In 1866 the said suit was instituted to settle the administration and distribute the estate, as was in the following year the suit of *Eddins and als.* v. *Cook's administrators and als.* They were consolidated. Various proceedings were had until 3rd October, 1874, when a decree was entered settling the principles involved. From it an appeal was taken to this court, by which it was affirmed, and the cause went back for further proceedings. The decree affirmed was vague and uncertain in parts, and on its face provided "that this cause stand referred to a master commissioner, with instructions to state and settle a farther distribution account, and a farther account of the fund to the credit of this cause, and that he make report to the court at its next term," &c. In February, 1880, the circuit court modified the decree of October 3rd, 1874, which had been affirmed, so as to make it more specific. The master having filed his report, and the same being excepted to, in June, 1880, the circuit court, without passing upon the exceptions, recommitted the report, with instructions that the master make two additional statements, to-wit: one showing the account after scaling payments made to any heirs in Confederate currency, and the payments made in that currency to the Confederate sequestrator; the other showing the account disregarding those payments to the sequestrator, but scaling such payments to the heirs. The master made re-

port to December term, 1880. His report embraced five statements: First, showed the payments in Confederate currency to the heirs and to the sequestrator after scaling them; second, classified the heirs as to the amounts they had received as of 15th June, 1880 ; third, showed how and to whom the funds should be paid to equalize the heirs; fourth, showed the payments made to the heirs, *disregarding* all payments made to the Confederate sequestrator, and scaling all other payments in Confederate currency ; fifth, showed how and to whom the fund should be paid, *disregarding* payments to the Confederate sequestrator to equalize the heirs as of June 15th, 1880. By its decree of 1st December, 1880, the court confirmed the first, second and third statements, and disapproved the fourth and fifth statements, thus allowing the administrators credit for the scaled value of Confederate currency payments to any of the heirs, and the payments made under compulsion to the Confederate sequestrator. No such questions arose, or were decided on the first appeal. From this decree the administrator of Margaret Miller obtained an appeal from one of the judges of this court.

*John E. Roller,* and *E. S. Conrad,* for the appellant.

For the appellee it is argued that as the decree of the 3d of October, 1874, is *interlocutory,* the circuit court had the right to *review the same, and " change, correct, modify, or reverse it in any respect, upon motion, without a petition or bill of review,"* notwithstanding the fact that an appeal was taken to this court *on the 2d of October,* 1876, and this court *rendered a decree* at its September term, 1879, in Staunton, *affirming all the decrees and proceedings heretofore rendered in the cause.*

*What was the effect of that appeal and that decree of affirmance?*

It was to bring up the whole proceedings in the cause prior to the appeal, and to have the appellate court pass not only upon

all errors against the appellants, but also upon all errors in those proceedings against the appellees.

The rule is thus stated in 2 Robinson's Practice, old edition, page 433: "Upon appeals from interlocutory decrees, so much of the cause is before the appellate court as the court below has acted upon, and no more. *Madden* v. *Madden*, 2 Leigh, 377; *Deas* v. *Thorner*, 3 Johns. 543. As in the case of an appeal from a final decree, not only an error in that, but any error in the former proceedings, ought to be corrected. So, upon an appeal from an interlocutory order, not only errors in that order, but errors in the former proceedings should be corrected. In either case the effect of the appeal is to bring up the whole proceedings prior to the decree or order from which the appeal is taken. *Lomax* v. *Picot*, 2 Rand. 247; *Jaques, &c.* v. *Methodist Episcopal Church*, 17 Johns. Rep. 548; *Atkinson* v. *Mauks*, 1 Cow. 702; *Teal* v. *Woodworth*, 3 Paige, 470."

These principles have been affirmed in *Burton* v. *Brown*, 22 Gratt. 1; *Campbell* v. *Campbell*, 22 Gratt. 673.

2. When the cause thus presented is determined by the appellate court, that decision is final, irreversible and conclusive upon all parties, not only upon the court of appeals itself when a new appeal is taken, but, *a fortiori, upon the inferior court.* It can only be assailed by a bill of review, upon the ground of the discovery of *new matter* unknown to the party seeking relief at the time the decree was rendered, and such as he could not have discovered by the use of reasonable diligence; and even then the court acts with the greatest caution; but for error apparent upon the face of the record, no bill of review can be received.

Yet it is claimed that it can be done by the inferior court upon a motion merely, without even a petition or bill of review, because the decree was interlocutory. But Judge Moncure, in *Campbell* v. *Campbell*, 22 Gratt. 671, declares: "We know of no warrant for any such distinction as is thus attempted to be drawn between what are called final and interlocutory decrees

of this court.; and we have been referred to no authority in support of this view. As was correctly said by the learned counsel of the appellees in their argument of this case, all the judgments and decrees of this court are final, and none of them are interlocutory."

The pretension in *Campbell* v. *Campbell*, 22 Gratt., was not that the inferior court could ever presume to correct what it might choose to call an error in the judgment of the court of appeals, but that the latter court itself, when the case came before it for the second time upon an appeal from a subsequent decree, could correct the error. "It seemed to be supposed that an appeal from a subsequent decree would bring up the whole case to this court, and thus empower it to make such decree in it as justice might require. Now, that is not the true theory. Such an appeal brings up only the proceedings in the case subsequent to the decisions of this court and the former appeal." See *Cahoon's Case*, 21 Gratt. 822; *Bank of Old Dominion* v. *Mc-Veigh*, 29 Gratt. 534; *Barkesdale* v. *Fitzgerald*, 76 Va. Rep. 892.

The language of the supreme court of the United States in the case of *Kendecott* v. *Supervisors*, 4 Otto's Reports, 283, is as follows: "It is settled in this court that whatever has been decided here upon one appeal cannot be re-examined in a subsequent appeal of the same suit. Such subsequent appeal brings up for consideration only the proceedings of the circuit court after the mandate of this court." *Himely* v. *Rose*, 5 Cranch, 313; *Martin* v. *Hunter's Lessee*, 1 Wheat. 355; *Broadus* v. *Mc-Auther*, 12 *Id.* 53; *Sibbard* v. *United States*, 12 Pet. 492; *Corning* v. *Troy Iron and Nail Co.*, 15 Howard, 464; *Sirzee* v. *Maury*, 16 *Id.* 103; *Roberts* v. *Cooper*, 20 *Id.* 481; *Tyler* v. *Maguire*, 17 Wall. 283.

In *Campbell* v. *Campbell*, 22 Gratt. p. 673, Judge Moncure declares that upon the second appeal, even the appellate court can only look to the proceedings in the cause subsequent to the decision of this court, on the former appeal, and in *Bank of Old Dominion* v. *McVeigh*, 29 Gratt. 553, Judge Anderson

speaks of the rule as one "which has been uniformly acted upon by this court and which is in conformity with well established principles."

If then, even the appellate court cannot modify or reverse its former conclusions, no matter whether the decree appealed from was interlocutory or final, how can the court below modify or disregard, and much less overturn and set aside any decree, be it interlocutory or not, after it has been affirmed by the court of appeals.

We submit to the court, that the inferior court has no such power, and that the decree of that court below in this cause is erroneous in that it attempts to exercise such power, and must be reversed.

*George W. Berlin*, for the appellees.

RICHARDSON, J., delivered the opinion of the court:

The contest here is as to the real or supposed conflict between the decree of 1874, as affirmed by this court in 1879, and the subsequent decree of December, 1880. The record in both cases is before us, and together must be looked to for a proper determination of this case. It will be seen, therefore, that this case must turn mainly, if not exclusively, upon the question, "Is the said decree of 1880, in conflict with said former decree of 1874, as affirmed by this court by its decree aforesaid, pronounced in 1879?" Or, in other words, "Was said last named decree a final decree and as such affirmed by this court so as to preclude the appellees as to the matters decreed in their favor by said decree of 1880, from which this appeal is taken?"

The suit of *Lingle and others* v. *Cook's adm'rs, &c., and others*, was brought in 1866, by certain of the legatees and devisees of said Cook, against his administrators and others, for the purpose of having a settlement of the administration account of his estate, and a distribution of same among them. In the succeed-

ing year, 1867, a suit in the name of *Eddins and others* v. *Cook's adm'rs and others*, was brought in the same court, by certain of said devisees and legatees against the said administrators and others, for the same purpose. The two suits were consolidated on the 28th day of October, 1869; subsequently various proceedings were had, which need not be here referred to, both in court and before the commissioners to whom, from time to time, the case was referred for settlement of the administration accounts. After repeated references for settlement, finally, in 1873, Commissioner Newman made a report to court of the accounts as stated and settled by him; and upon exceptions to this report several questions arose, all of which, so far as definitely determined, are stated in separate distinct paragraphs or clauses in said decree, numbered from one to seven, inclusive, and are:

First. Who, and to what extent, among the several administrators and their respective sureties were chargeable with the assets of the testator's estate.

Second. That as to the liability sought to be charged upon the defendant, Robert S. Harnsberger, as purchaser of certain bonds from the estate, referred to in the cause, the said Harnsberger was not liable to account for same, his purchase having been in good faith, for valuable consideration, without any notice of any intended *devastavit* on the part of the administrators, if any was intended.

Third. Affirming the report of said commissioner, refusing to allow commissions to the administrators because they had failed to settle their accounts as required by law.

Fourth. Allowing, as reported by the commissioner, credit to the administrators for certain investments in Confederate bonds.

. Fifth. Allowing the claim of W. C. Kiblinger and others, special legatees under the will of the testator, their claim of $1,082.76, with interest from the 1st of April, 1873, as prayed for in their petition filed in said cause.

Sixth. Holding that inasmuch as it was conceded that George

W. Miller, with Hiram A. Kite and others as his sureties, was indebted by bond to the testator, in the sum of $2,000, with interest from the 2d day of January, 1857, and judgment having been recovered on said debt against Hiram A. Kite and Joseph H. Kite and Henry Miller, surviving obligors of themselves, and G. W. Miller and Joseph H. Conrad, deceased, all of whom were sureties, except said George W. Miller, and said judgment being in the control of the general receiver of the court, subject to certain specified credits, and the said George W. Miller being one of the legatees, his legacy should be applied to the payment of his said indebtedness, and his sureties in such obligation to that extent relieved as judgment debtors to said estate, and that said Hiram A. Kite have refunded to him so much of the money paid by him on said judgment, as he might be entitled to upon a proper adjustment of said judgment with respect to said legacy.

Seventh. That the amounts going to the administrators, Robert B. Cook and Joseph H. Conrad, in right of his wife, as legatees of said testator, being in their hands as administrators, as well as the amount going to George W. Miller, should not be included in the amount thereinafter decreed to be paid to the general receiver.

These seven distinct clauses constitute, in the language of the decree itself, the principles thus far upon which the court below was proceeding, seem to comprehend a definite settlement of the questions therein considered. But said decree does not stop here; on the contrary, in the succeeding eighth clause thereof, the decree proceeds: "That it being suggested that there is some uncertainty as to whether all of the legatees or their representatives have been ascertained with entire accuracy, and there being no question that upon the principles of this decree, there is due to the legatees of John Cook, deceased, the aggregate sum of $44,520.14, according to the statement marked (R. H. T.) made by the court, and ordered to be made a part of the record, and which is based upon Master Commissioner Newman's statement No. 3, showing the amount paid to the distributees, and

the amount yet due from the administrators, which statement the court doth approve, and also to avoid the vexation of numerous executions against the defendants, which would result from decrees in favor of the legatees severally, it is proper that the amount ascertained to be due from the administrators of John Cook, deceased, and their sureties, shall be paid to the general receiver of this court, *to be hereafter disbursed* under orders and decrees of the court in this cause; it is therefore, and in pursuance of the principles hereinbefore settled, adjudged, ordered and decreed as follows," &c. And then the court went on in corresponding decretal clauses to adjudge, order and decree according to the principles laid down in said eight clauses; and in the decretal clause corresponding to said eighth clause, uses this very significant language: "That this cause stand referred to the Master Commissioner, A. M. Newman, with instructions to take, state and settle *a further distribution account*, and a further account of the fund to the credit of this cause, and that he make report to the court at its next term, &c." Such was the decree of the court below, and as such was affirmed by this court upon appeal, in said case of *Lingle & als.* v. *Cook's adm'r & als.*, 32 Gratt. 262. It is contended by counsel for the appellant that this decree of the court below, pronounced on the 3d day of October, 1874, was a final decree, not resisted, but acquiesced in by the appellees, who were parties to that suit, and that they must, however great the hardships to them, stand precluded thereby and denied the benefits secured to them by the subsequent decree in their favor, and from which this appeal has been taken.

This contention finds complete refutation in the very language of the decree relied on as final. It does not even give costs. Its language, so far from importing finalty and leaving nothing to be settled, in the broadest and most unmistakable terms, sends the cause back to the commissioner, with instructions to take, state and settle *a further distribution account*, and *a further account* of the fund to the credit of this cause, &c. And in the

preceding eighth clause, so much. relied on by counsel for the appellant to establish the finality of that decree, the court below says: "It is proper that these amounts ascertained to be due from the administrators of John Cook, deceased, and their sureties, shall be paid to the general receiver of this court, to be hereafter disbursed under orders and decrees of the court in this cause,"—evidently meaning orders and decrees thereafter to be made, and recognizing in unmistakable terms, as disclosed by the record, that neither in that nor any previous decree, had any distribution been made, as between the legatees. It can make no difference that the appellees did not except to the preceding report, which treated some of them as paid off dollar for dollar, in Confederate treasury notes, and others as having their shares absorbed by compulsory proceedings had under the Confederate act of sequestration; because that report of the commissioner was never confirmed—certainly never as to the questions involved here, the matter of the proper distribution of the testator's estate, between the legatees, according to said testator's will. Whether excepted to or not, that report, in the particular under consideration, was, until confirmed, under the control and power of the court, and in the legitimate exercise of that power, the court rejected, *ex mero motu,* at least that feature of the settlement, which appeared unconscionable, and directed a further account. There can be no question of either the right or propriety of the course taken.

The fundamental error which lies at the root of the appellants case is, in assuming, without warrant, and in the face of the plain terms of the decree, that it is a final decree, and the appellees are concluded thereby, when those terms indelibly stamp it as an interlocutory and not a final decree. Hence, from his standpoint, the counsel for the appellants lays down the proposition, which no one will deny, that the effect of the appeal from said decree of October 3d, 1874, was to bring up the whole proceedings in the cause prior to the appeal, and that the affirmance of said decree by this court is final and cannot in any way

be disturbed by this or any other court; and in support of this proposition, which generally no one can deny, refers to 2 Rob. Pr., old edi., 433, where it is said: "Upon appeals from interlocutory decrees, so much of the cause is before the appellate court as the court below has acted upon, and no more"; and attempts to fortify the position by reference to *Madden* v. *Madden's Ex'ors*, 2 Leigh, 377, and numerous other authorities which need not be named, as the rule laid down and enforced by them is unquestioned touching the effect of a decree final in the sense of settling the principles involved, but wholly inapplicable to a case like this, where the decree was too plainly interlocutory to admit of any, even plausible, pretext for holding otherwise, and was not intended to settle the principles in respect to which the subsequent modification was made. It will be observed that this contention ignores, practically, the very language of the decree which illustrates the fact that it was not, and could not have been intended to be a final decree, disposing of the cause; but on the contrary expressly retained for future investigation and decree, the very subject of controversy here now. And ignores the fact that the statement of the proposition is its own refutation, inasmuch as the eighth clause of said decree, so much relied on to establish its finality, looks to decrees thereafter to be rendered as important to the final disposition of the cause; and the fact that it is declared in the very last sentence of the opinion of this court, affirming said decree, that there is no error therein. It is strangely paradoxical to say that said decree of 1874, is final, when an important provision therein—the very one relied on for its finality—directs the performance of most important duties as essential to these future decrees, and at the same time rely upon the affirmance by this court, as fixing its finality, when it is perfectly obvious that the decree of affirmance, taken as a whole, as looked to by the counsel for the appellant, embraces and affirms that feature of said decree directing the further account, as well as other features thereof. It is useless to pursue this subject further than to add that, " where the further action of

the court in the cause is necessary to give completely the relief contemplated by the court, the decree upon which the question arises is to be regarded not as final but interlocutory." *Cook's adm'r* v. *Gilpin,* 1 Rob. 20, and numerous other decisions of this court, including the recent case of *Smith* v. *Blackwell,* 31 Gratt. 291, which abundantly sustains the view that the decree of October 3d, 1874, was not final, but interlocutory.

In passing, it must be admitted that the language in said eighth clause in reference to statement "R. H. T." made by the court, and ordered to be made a part of the record, *"and which is based upon Master Commissioner Newman's statement No. 3, showing the amount paid to the distributees"* and the amount yet due from the administrators, "which statement the court doth approve," is, in view of the marked character, &c., general scope and purpose of this decree, in other respects, to say the least, unintelligible; but this so far from fixing the decree as final, should have the opposite effect.

Nothing further seems to have been done in the court below, until after the decree of affirmance here, when the commissioner returned his report under said decree of 1874, charging Confederate treasury notes paid to certain legatees dollar for dollar, and others who happened to be beyond the Federal lines, with their shares as paid by the administrators to the sequestrator, under compulsion; the details of which need not be here set forth. It is sufficient to say, that report was excepted to, the exceptions sustained, and the report recommitted with special instructions for alternate statements; in obedience to which instructions the account was restated and reported; and the circuit court of Rockingham adopted and confirmed the commissioner's statement No. 3, which charged the legatees inside the Confederate lines with the scaled value of the Confederate treasury notes when paid to them, and the foreign legatees in the same way with the amount sequestered in their names; and in that way admitted both classes to share equally with others, and thus effectuating the testator's intention; and the said

circuit court on the first day of December, 1880, decreed accordingly, from which decree this appeal was taken.

The fact has already been adverted to, that in the report of the commissioner made prior to the decree of October 3, 1874, the shares of the foreign legatees were treated as having been paid to the Confederate States sequestrator, and that certain other of the legatees were charged with the Confederate treasury notes paid them, at their nominal value. It is true that the court below in rendering the decree of October 3, 1874, allowed the administrators credit for the amounts (nominally) thus paid by him; and however averse this court might be now to go even to the extent it did go in affirming, to that extent, the court below, yet it is plain for many reasons that the credit thus allowed the administrators, under the peculiar circumstances, rests on other and much weightier considerations than the act of spoliation sought to be visited upon these foreign legatees, could stand upon. *Newton* v. *Bushong*, 22 Gratt. 629. The administrators making payments as it were at the point of the bayonet, could well be heard to excuse themselves for acts which would have amounted to a *devastavit*, but for the compulsion under which they acted. But on the other hand it would be harsh and manifestly unjust to deduce therefrom the right to exclude these foreign legatees from a just participation in the estate so far as not wasted; and equally unjust to the legatees who received Confederate States treasury notes to charge them with the nominal value in full, and thus practically exclude them from participation in the bounty intended for them as well as the others. However, the law as laid down by the supreme court of the United States, in the case of *Williams* v. *George Bruffey's adm'r*, 6 Otto, 176, holds that the sequestration laws of the Confederate States were null and void, and did not forfeit money due to citizens of the United States residing outside of the Confederate States. What we have said does not conflict necessarily with anything settled by the former decree of this court affirming the said decree of October 3, 1874. Nothing of

the kind is intended, nor is it necessary for the ruling now made.

As to the point made by counsel for the appellant, that the right asserted by the appellees in the court below could only have been brought forward by petition or bill of review, it is only necessary to say that the decree of October 3, 1874, being merely interlocutory and the court retaining the cause, and directing important inquiries essential to a final decree disposing of the whole cause, it was competent for the appellees to raise the questions as they did, by exceptions to the commissioner's report at any time before final decree. *Steptoe's ex'or* v. *Steptoe and others,* 1 Mun. 339 ; *Mackey, ex'or of Fuqua* v. *Bell, &c.,* 2 Mun. 523 ; *Smith* v. *Blackwell,* 31 Gratt. 291. In every view the decree appealed from is right and the same must stand affirmed with costs to the appellees, which is ordered to be certified to the said circuit court of Rockingham county.

DECREE AFFIRMED.